### HAMILTON v. WESTERN UNION TELEGRAPH CO., Inc.

### No. 20221.

District Court, N. D. Ohio, E. D.

May 9, 1940.

Hammond, Hoyt & Rand, of Youngstown, Ohio, and Payer, Corrigan, Bleiweiss & Cook, of Cleveland, Ohio, for plaintiff.

Harrington, Huxley & Smith, of Youngstown, Ohio, for defendant.

E. B. Freed, U. S. Atty., and Jerome N. Curtis, Asst. U. S. Atty., both of Cleveland, Ohio, amicus curiæ.

WILKIN, District Judge.

This cause came on for determination of the motion of the defendant (filed March 2, 1940) to dissolve the preliminary injunction granted February 26, 1940. At the presentation of the issue in open court on March 12, 1940, the United States Attorney for the Northern District of Ohio was granted leave to appear, amicus curiae, and participate in the argument. Thereafter, he requested an extension of time for presentation of affidavits. After such affidavits were filed, the plaintiff requested an extension of time to May 7 for the filing of additional affidavits.

After consideration of the pleadings, affidavits, arguments, and briefs, the court sustains the motion of the defendant and dissolves the preliminary injunction.

The petition was filed originally in the court of common pleas of Mahoning County, Ohio. The case was removed to this court upon petition of the defendant on the ground of diversity of citizenship. The petition alleges that the defendant is a public utility, and that the plaintiff is engaged in the business of receiving and distributing news for profit; that the defendant is furnishing the plaintiff with certain leased wires; that the service is such as the defendant offers and furnishes to the public generally; and that it is necessary to the plaintiff's business. The petition alleges, however, that the defendant, on the 17th day of February, 1940, notified the plaintiff that it intended to discontinue such service at the close of business February 23, 1940; and that the discontinuance of such service would occasion the plaintiff irreparable damage. It closed with prayer for a restraining order. A preliminary injunction was allowed, and a motion to dissolve was filed.

The reason assigned by the defendant for its determination to discontinue service was that the plaintiff was using such service for an illegal purpose. The affidavits filed by the defendant and by the United States Attorney tend to show:

That the plaintiff was formerly connected with the Annenberg associations and affiliates, which were engaged in obtaining information from race tracks and distributing it to bookmakers and gambling houses throughout the country; that one of the Annenberg agencies was known as Nationwide News Service, Inc., and that the plaintiff was manager of such agency at Youngstown, Ohio; that the Annenberg associations and agencies were investigated by the United States District Attorney at Chicago; that, as a result of such investigations and prosecutions which followed, the United States Attorney at Chicago notified the defendant in this case, together with other telegraph and telephone companies, that if such wire companies continued to give service to the An-

nenberg organizations they would be held to account for knowingly aiding, abetting, and conspiring in the violation of state and federal laws; that such companies thereupon notified the Annenberg organizations that service to them would be discontinued; that the Nationwide News Service, Inc., and other Annenberg organizations brought suit in the United States District Court in Chicago to enjoin the wire companies from discontinuing service; that a preliminary injunction in such case was denied upon the ground that the business of the Annenberg organizations was almost entirely devoted to bookmakers and gamblers, and that, if the court were to issue an order restraining the discontinuance of such service by wire companies, it would, in effect, facilitate the violation of laws of the State of Illinois; and that before final hearing in that suit, the attorneys for the Annenberg organizations withdrew their complaints and agreed to close and terminate the entire business.

The affidavits further tend to show:

That in spite of the assurances made in Chicago, a nationwide plan still exists and is in operation for the continuance of what is essentially the same service, i. e., the obtaining of information from race tracks and the distribution of such information through central clearing points to bookmakers and gamblers, and that the plaintiff in this suit is a participant in that plan. That many of the officers and employees of the present plan were formerly officers and employees of the Annenberg organizations. That as a result of the operation of such plan, information is still being gathered from race tracks and transmitted to bookmakers and gambling establishments for the purpose of making bets and paying off winners. That definite race track information was traced through the office of the plaintiff in Youngstown, Ohio, to eight or ten gambling places in and about Youngstown where bets were made.

The use made of such information at said gambling places was in violation of Sections 13054 and 13062, G.C. of Ohio.

The court is not required, in connection with this issue, to determine the truth or falsity of the allegations contained in the affidavits. If there is justification for the defendant's belief that the information transmitted to the plaintiff over its wires is being used for an illegal purpose,

a court of equity will not restrain the defendant from discontinuing such service. The tariffs published by the defendant contain a provision preventing lessees of its wires from using its service to violate, directly or indirectly, any federal or state law. Even without such provision in the tariffs, the defendant would not only be authorized, it would be obligated, to discontinue service which contributes to and facilitates the operation of a business or enterprise in violation of law. Any person or company that knowingly assists in a scheme to violate the law is subject to prosecution. A court of equity will not restrain the discontinuance of service by a utility if the character of the use of the service is such as to justify an honest doubt as to its legality. The service which a person has the right to demand of a public utility is service lawful in character.

While the affidavits filed by the plaintiff denied any connection between the plaintiff's business at Youngstown and M. L. Annenberg or Nationwide News Service, Inc., and while they tended to show that information other than race track information was also received over the leased wires, still the evidence as to the antecedence of the business at Youngstown, as to the former employment of the plaintiff, and as to the direct communication from plaintiff's office to the places in and about Youngstown definitely identified as bookmaking and gambling places, leaves little doubt as to the unlawful purpose of the plaintiff's business, and little doubt as to the main source of the income for which the business is operated.

The plaintiff's affidavits also tend to show that the information which it receives and transmits goes also to newspapers and is published by them. That part of the plaintiff's business is no doubt lawful. But it would appear from the affidavits that that is only a part of the business.

This court concurs in the decision in the case of the Nationwide News Service, Inc., et al. v. American Telephone & Telegraph Co., Illinois Bell Telephone Co., and Western Union Telegraph Co. et al.,[1]; and the views expressed by Judge Wilson in the case of Leonard J. Nevans v. Southern California Telephone Co., et al., in the Superior Court of California, Los Angeles County, No. 447702. Judge Wilson said: "So far as the duty of a public service corporation

---

[1] No opinion for publication.

to furnish service is concerned, it is not absolute. I think we all know that. It is subject to reasonable limitations generally, if necessary to public welfare and public order, at least, a public service corporation is not bound to furnish service to any one who has—who it has reason to believe will use the service for illegal purposes. To my mind there is no doubt about that."

In conclusion, this court can adopt the very words used by Judge Wilson in disposing of that case: "As I read the affidavits the burden has not been sustained by the plaintiffs to overcome the—well, it is not a presumption, but to overcome the evidence introduced here by the affidavits that the information is being used, and has been used for unlawful purposes. The temporary restraining order is dissolved and the application for a preliminary injunction is denied."

In this case the preliminary injunction is dissolved.