DELAWARE SPORTS SERVICE, a Partnership, Plaintiff,

v.

The **DIAMOND STATE TELEPHONE COMPANY**, a Corporation of the State of Delaware, Defendant,

and

The State of Delaware, Intervenor.

Civ. A. No. 2901.

United States District Court
D. Delaware.

April 27, 1965.

Henry A. Wise, Jr., of Wise & Suddard, Wilmington, Del., for plaintiff.

Hugh L. Corroon, of Berl Potter & Anderson, Wilmington, Del., for defendant.

Ruth M. Ferrell, Deputy Atty. Gen., for the State of Delaware.

LAYTON, District Judge.

Plaintiff is here seeking an injunction to prevent Diamond State Telephone Company (hereafter Diamond State) from terminating telephone service. The background of this extended litigation is as follows.

On November 28, 1960, Diamond State gave notice to Delaware Sports Service (hereafter Delaware Sports) that its telephone service would be terminated [1] because of alleged gambling activities unless it filed a complaint with the Delaware Public Service Commission (hereafter Commission) to have that body decide whether Diamond State would be required to continue providing service to Delaware Sports. Delaware Sports then filed a petition with the Commission seeking to prevent Diamond State from terminating its service. On June 28, 1961, an order was entered granting the Attorney General of Delaware the right to intervene.

Despite having initiated proceedings, Delaware Sports took the position that the Commission was without jurisdiction since Delaware Sports did all of its business across state lines. After a thorough discussion concluding that the arguments of all parties were erroneous, the Commission correctly held that, in a proper case, it was vested with jurisdiction under 26 Del.Code § 135, to enter an order requiring Diamond State to furnish service to Delaware Sports. In re Delaware Sports Service, PSC Docket No. 328 (Dec. 14, 1961).

In a subsequent opinion on the merits, the Commission found that the telephone service furnished to Delaware Sports was being used in furtherance of an illegal purpose. Accordingly, the Commission held that Diamond State should not be enjoined from discontinuing service to Delaware Sports. In re Delaware Sports Service, PSC Docket No. 328 (Sept. 12, 1962).

Subsequent to reargument before the Commission, Delaware Sports appealed to the Delaware Superior Court. The Superior Court affirmed the Commission's conclusion. In re Delaware Sports Service, 196 A.2d 215 (1963). In so holding, the court relied solely on the common-law right of a telephone company to discontinue service where that service tends to promote illegal gambling in contravention of public policy. The court expressly indicated that it did not consider whether any sections of the Delaware Code, or a tariff filed by Diamond State indicating that it retained a right to terminate service, would justify Diamond State in discontinuing service to Delaware Sports. Motion for reargument was denied.

The Delaware Supreme Court affirmed per curiam. In re Delaware Sports Service, 202 A.2d 568 (1964).

Certiorari to the United States Supreme Court was denied. Delaware Sports Service v. Diamond State Tel. Co., 379 U.S. 965, 85 S.Ct. 657, 13 L.Ed.2d 559 (Jan. 19, 1965).

Delaware Sports' assertion of a right to protection in this court is ill founded. Not only has the plaintiff exhausted its right to litigate the matter, but the contentions it now makes are without merit.

■ Plaintiff has urged this court to find that the Commission was without jurisdiction, and bases its argument on the Commerce Clause. But, in my judgment, the Commission's exercise of jurisdiction was proper since it had the power to grant such an order as clearly set forth in 26 Del.Code § 135.[2]

1. This was the second time that notice of termination of service had been given to Delaware Sports. Prior to 1960, Diamond State had given notice that service would be terminated under 11 Del.Code § 675. The Chancery Court held that the state statute was unconstitutional and enjoined Diamond State from terminating service. Tollin v. Dia-mond State Tel. Co., 164 A.2d 254 (1960).

2. The statute provides:
"The Commission may, after hearing, upon notice, by order in writing, require every public utility to furnish safe, adequate and proper service and keep and maintain its property and equip-

■ The Commerce Clause is not relevant to the question presented here. A utility company has a duty to provide service for the customers in its territory. This is a duty imposed by state law and the state courts have jurisdiction to enforce it.[3] Any remaining doubts as to state jurisdiction should be removed by the reference in 18 U.S.C. § 1084(d) to proceedings such as that initiated before the Commission.[4]

■ The plaintiff has argued that jurisdiction in the state proceedings was invalid because it was forced to bring its action to the state commission. This argument is founded on the letter of notice to the plaintiff advising it that service would be terminated unless it brought such an action. The idea that the state adjudication may not be binding as to federal questions if the plaintiff were forced to litigate its questions in a state forum might have merit in a proper case. Thus, in England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), the court held that since the plaintiff justifiably believed he had to litigate his federal claims in the state courts, when the action was referred thereto under the doctrine of abstention, he would be allowed to relitigate them in the federal courts. The case at bar does not qualify for this exception. There is no confusion in the law regarding the plaintiff's right to a temporary injunction pending determination of his rights in the forum of his choice. Or stated otherwise, upon receipt of Diamond State's letter of notice threatening to discontinue service, plaintiff had a perfect right to apply for a temporary injunction against the threatened discontinuance pending a determination by a federal court. But plaintiff, nevertheless, elected to proceed before the State Commission. Under such circumstances, plaintiff's contention that it was forced to litigate in the State Courts is unimpressive.

■ The jurisdictional question disposed of, the conclusion that this Court should not issue an injunction is quite obvious. The right of Delaware Sports to a protective order has been fully and finally litigated in tribunals with jurisdiction. Under the doctrine of *res judicata*, this Court is bound to that result. Grubb v. Public Utilities Commission of Ohio, 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972 (1930). The soundness of this result is apparent since there is

> "no reason why a party, after unreservedly litigating his federal claims in the state courts although not required to do so, should be allowed to ignore the adverse state decision and start all over again in the District Court. Such a rule would not only countenance an unnecessary increase in the length and cost of the litigation; it would also be a potential source of friction between the state and federal judiciaries."

England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 419, 84 S.Ct. 461, 466, 11 L.Ed.2d 440 (1964).[5]

ment in such condition as to enable it so to do."

3. This question is not related to the question of whether the police power can be exercised to compel termination of service.

4. This statute provides:
"Nothing in this section shall be deemed to prejudice the right of any person affected thereby to secure an appropriate determination, as otherwise provided by law, in a Federal court *or in a State or local tribunal or agency*, that such facility should not be discontinued or removed, or should be restored." Title 18 U.S.C. § 1084(d). (Emphasis added.)

5. The Court finally held that the appellants could relitigate their federal questions in the federal courts. The Court reached this conclusion on the ground that there was such uncertainty in the law that the appellant was justified in believing that he was required to litigate his federal claims in the state courts. The confusion referred to related only to procedure in abstention cases, and is not relevant in the case at bar.

There is a striking similarity between the case at bar and Grubb v. Public Utilities Commission of Ohio, 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972 (1930), in which the Supreme Court believed the conclusion to be so obvious that it decided the case without oral argument. In that case, Grubb applied to the Ohio Public Utilities Commission for a certificate to operate motor buses, solely in interstate commerce, over certain highways of Ohio. The Commission granted the license as to most of the route, but excluded, in the form of a prohibition, a portion of the route requested. Grubb thereon initiated injunctive proceedings in the United States District Court to prevent enforcement of the portion of the order which was unfavorable to him. In the meantime the parties sought a review of the Commission's order by the Ohio Supreme Court. The Ohio Supreme Court was the first to reach a final decision and held that the Commission's order was valid. The three judge district court thereon dismissed the proceedings on the ground that Grubb was barred and estopped from further litigating the same matter. The cases are directly parallel on the facts which were crucial to the Supreme Court's decision: (1) a prior final decision on the merits in the state court; (2) identity of parties in the state and federal proceedings; (3) identity of subject matter in state and federal proceedings.

On appeal, the Supreme Court unequivocally held that the final decision of the state court was conclusive in the federal court as *res judicata* on all matters in the suit.

■■ There seems to be some question as to whether plaintiff's arguments as to the effect of 18 U.S.C. § 1084(d) were made in the state proceedings. Regardless of whether they were, the plaintiff does not have a right to adjudicate that question in this Court. The Grubb case is dispositive: when the parties and the thing presented for adjudication are the same as in the state court proceeding, the fact that certain available arguments were not brought to the attention of the state court does not afford a party the right to bring a suit in the federal courts to assert that right. In so holding the Court relied on the age-old rule against piecemeal litigation. Grubb v. Public Utilities Commission of Ohio, supra, 281 U.S. at 478–479, 50 S.Ct. 374. There is no doubt but that the arguments based on 18 U.S.C. § 1084(d) were available to plaintiff during the state proceedings. The Statute was passed before the Commission handed down its opinion on the merits, albeit subsequent to the initiation of the state proceedings. The sweeping scope of the holdings in the Grubb case undermine all of plaintiff's arguments that this court should make an independent examination of the merits of this case.

Disposition of this case on the ground of *res judicata* should not give rise to an inference that findings and conclusions in the state proceedings would not withstand review or that a new proceeding in this court would result in a different conclusion. Despite the fact that *res judicata* forecloses this court from granting the relief denied plaintiff in the state proceedings, in an effort to remove the apparent confusion of the plaintiff, a brief consideration of plaintiff's principal arguments will be undertaken.

■ The main argument of the plaintiff is that even if the Commission and the Delaware Courts had jurisdiction, they cannot "permit discontinuance of service by a common carrier because service violates public policy not a State, Federal or local law as provided by 18 USCA 1084(d)." Plaintiff's Letter Brief, March 1, 1965, at 7. The main thrust of this argument is that telephone service can be terminated only as provided by 18 U.S.C. § 1084(d). There is no foundation for the idea that a telephone company is so limited in its ability to terminate service.

The legal right of a telephone company to terminate service when the com-

pany believed that the service was used in furtherance of an illegal purpose [6] has long been firmly established.[7] The denial of any relief in the state proceedings was founded on this well developed body of law.

Plaintiff's contention that Congress pre-empted this body of common law by enactment of 18 U.S.C. § 1084(d) is wholly erroneous. In the first place, the common law and the statute deal with essentially different subject matters. The common law deals with the issue of when a telephone company *can* terminate service and the statute deals with the question of when a telephone company *must* terminate service.

Furthermore, the conclusion that the common law was pre-empted is inapposite to the purpose of the statute as outlined in the legislative history. A communication to the House of Representatives, from then Attorney General Kennedy, was attached to the proposed bill when it was submitted for consideration to the House. That communication emphasized the desirability of such legislation as a means of suppressing organized gambling *by depriving book-makers of much needed communication facilities.* House Report No. 967, 87th Cong., 1st Sess. (1961), in U.S.Code Congressional and Administrative News, pp. 2633–2634 (1961).

The object of the law is further indicated in the House Report setting out the purpose of the bill:

> "The purpose of the bill is to *assist* the various States and the District of Columbia in the enforcement of their laws pertaining to gambling, bookmaking, and like offenses and to *aid* in the suppression of organized gambling activities by prohibiting the use of wire communication facilities which are or will be used for the transmission of bets or wagers and gambling information in interstate and foreign commerce." (Emphasis added.)

Id. at 2631.

Two conclusions relevant to the problem at bar can be drawn from this legislative history. First of all, the purpose of the legislation was to "aid" the states. Such a purpose is inconsistent with the contention of pre-emption. Secondly, the means of assistance was to be a deprivation of communication facilities to those who would use them in organized gambling activities. Plaintiff's conten-

---

6. Plaintiff persists in arguing that 11 Del. Code § 675 cannot be enforced to deprive it of telephone service. But the proceeding at the state level was not a suit by the state to compel Diamond State to discontinue service. Such a suit would have been necessary if Diamond State did not believe that Delaware Sports was wrongfully using its service or if Diamond State had refused to cooperate. The state proceeding was an attempt to prevent Diamond State from terminating service as it has threatened to do.

7. The opinion of the Delaware Superior Court succinctly and accurately states and applies the well developed common-law principles:

> "Generally, however, a telephone company may take the necessary steps to discontinue such service where it is reasonably satisfied that such service is being utilized by its customer to violate the statutory law against dissemination of racing information * * or where the use of such telephone service is against public policy, such as in the furtherance of bookmaking, an illegal enterprise in this and other states * * *." In re Delaware Sports Service, 196 A.2d 215, 219 (1963).

A similar statement of the law was set forth in Telephone News System, Inc. v. Illinois Bell Tel. Co., 220 F.Supp. 621, 632 (N.D.Ill.1963):

> "It has long been held that the customer's right to service from a public utility is conditioned upon his lawful use of the service. * * * The utility has a right to withdraw service to prevent illegal use of its facilities * * *. The practice in a number of states has long been that the utility discontinues service upon notification by the police that the service is being illegally used * * *."

The law was clearly stated and applied in Hamilton v. Western Union Telegraph Co., 34 F.Supp. 928, 929–930 (N.D.Ohio 1940) and Tracy v. Southern Bell Telephone & Telegraph Co., 37 F.Supp. 829 (S.D.Fla.1940).

tion would have the effect of impeding the process of deprivation of communication facilities, in that telephone companies would be prevented from voluntarily terminating service.[8] The Act should not be construed to limit the procedure for termination of service to actions initiated by the government.

Clearly, to construe 18 U.S.C. § 1084 as providing the sole procedure for the termination of service would tend to undermine the objective underlying the Act. It is my conclusion, then, that 18 U.S.C. § 1084 was not intended to preempt the field and provide the exclusive procedure for the termination of service by a utility.

■ The remaining phase of plaintiff's argument, that there was error in the state proceedings because termination of service must be preceded by the finding of a violation of law, also falls. This contention is at odds with the existing law on two grounds; namely, the relevant consideration is not whether the utility user is in violation of law, but rather the test is whether the service is being used to aid an illegal purpose. Secondly, the law does not require the utility company to prove, as a fact, that the service is used to aid an illegal purpose. The law allows the utility to terminate service if it can prove that it reasonably believes that the service is being so used. The law on both points is well established:

"[I]t is well settled that a telephone company may refuse, and cannot be compelled, to furnish service which will be used, or which the Telephone Company has *reasonable cause to believe* will be used, *in furtherance* of illegal enterprises."

Tracy v. Southern Bell Telephone & Telegraph Co., 37 F.Supp. 829, 830 (S.D. Fla.1940). (Emphasis added.) See also, Hamilton v. Western Union Telegraph Co., 34 F.Supp. 928 (N.D.Ohio 1940); Rubin v. Pennsylvania Public Utility Commission, 197 Pa.Super. 157, 177 A.2d 128 (1962).

The plaintiff is further remiss in assigning this error to the state proceedings because the facts do not support his argument. The Commission did not deny relief to Delaware Sports merely on the basis of Diamond State's belief. The Commission indicated that the rights would be determined as follows:

"[S]hould we conclude that Petitioner is using its extensive telephone facilities to forward and promote an illegal activity, we will, with equal force, uphold the utility's proposed action to prevent its lending its facilities to any illegal act." PSC Docket No. 328 at 4–5 (Sept. 12, 1962).

Thereafter, the Commission found as a fact that the service was being used to aid an illegal purpose:

"Based on the evidence before us, we are constrained to find that Petitioner's service under its present arrangement was being used to aid illegal gambling in several States including, but not limited to New York, New Jersey, Maryland, and Delaware." PSC Docket No. 328 at 18–19 (Sept. 12, 1962).

The Delaware Superior Court affirmed the finding at 196 A.2d 221:

"A fair reading of all the testimony on which the Commission relied establishes that it was justified in

---

8. The purpose of suppressing gambling is accomplished with equal effect whether the phone company voluntarily terminates service or whether termination is accomplished under the force of the statute. The necessity of 18 U.S.C. § 1084 has not been apparent in this case because Diamond State believed that the service was being wrongfully used, and voluntarily undertook to terminate service. However, a general reluctance on the part of public utilities to cooperate by discontinuing service is quite understandable: by terminating service of their own volition the company subjects itself to a risk of a damage suit and forecloses itself from the benefits of a lucrative source of income. The statute provides a means of forcing uncooperative or reluctant utilities to terminate service and at the same time removes the risk of a suit for damages from the utility.

reaching its conclusion that Delaware Sports Service disseminated flash results of horse races primarily for the use of bookmakers."

Furthermore, in so aiding illegal gambling the plaintiff was apparently violating the law.[9] Plaintiff's contention is not only legally erroneous, but is without substance in fact.

Plaintiff has briefly alluded to two other errors or shortcomings which it claims entitle it to litigate its claim in the federal courts. Neither argument has any merit. One of these claims of error is based on the Commission's refusal to exclude all evidence which would be objectionable under normal rules of evidence. The opinion in the Superior Court clearly disposes of the validity of the plaintiff's contention in this regard by holding that an administrative commission is allowed to receive evidence which would be excluded under the rules of evidence. But, in any event, the Commission explicitly indicated that in reaching its decision it had not considered evidence which would normally have been excluded under the rules of evidence.

Plaintiff also contends that there was error in the state proceedings because the burden of proof was placed on Delaware Sports. Once again, the opinion of the Superior Court is dispositive of the plaintiff's contention:

"Although the Attorney General claimed petitioner had the burden of proof, he proceeded throughout the hearing on the assumption that he and Diamond had the burden. And even though the opinion of the Commission expressed the belief that petitioner had the burden, nevertheless, it found this issue moot and decided the case on the assumption that petitioner did not have the bur-

den." In re Delaware Sports, 196 A.2d 215, 223 (1963).

Plaintiff's motion for an injunction is herewith denied and the case is dismissed.

9. 11 Del.Code § 674 provides:
"No person shall engage in the business of, or receive compensation in any form or measure for, the dissemination of or receive information in furtherance of gambling or for gam-

bling purposes by means of private wire or wires, or by means of a call service."
However, neither the Commission nor the Superior Court relied on a violation of this statute.