Albert J. TOLLIN et al., Plaintiffs,

v.

The **DIAMOND STATE TELEPHONE COMPANY**, Defendant.

Civ. A. No. 3373.

United States District Court
D. Delaware.

May 10, 1968.

Henry A. Wise, Jr., Wise & Suddard, Wilmington, Del., for plaintiffs.

Hugh L. Corroon, Potter, Anderson & Corroon, Wilmington, Del., for defendant.

## OPINION

LAYTON, District Judge.

On January 31, 1968, by an unreported opinion, this Court dismissed defendant's motion for summary judgment in the above entitled action. Thereafter, defendant filed a timely motion for reargument, raising a point not heretofore briefed and argued.

The ground is that plaintiffs' right of action is barred by Title 18 U.S.C. Section 1084(d) because defendant's discontinuance of plaintiffs' telephone service was in compliance with a proper notice received from a law enforcement agency. Based upon the provisions of this Section, and supplementary affidavits to which defendant has filed no counter affidavits, defendant's motion for summary judgment will be granted for the reasons hereafter stated.

Title 11, Sec. 675 Del.C., reads as follows:

"Revocation of service contracts; exemption from liability

"Any public utility shall, when it is advised in writing by any law enforcement agency acting within its jurisdiction that any service furnished by it is being used in the dissemination of information in furtherance of gambling, or for gambling purposes, revoke its contract to furnish any such service.

"No public utility shall be liable at law or in equity for any damages or penalties, either civil or criminal, for such revocation of contract."

Pursuant to this Section, on October 13, 1959, defendant received a letter from the Attorney General of Delaware stating, inter alia:

"We have reasonable grounds to believe that Delaware Sports Service is engaged in the business of, and receiving compensation for, the dissemination of information (via telephone) in furtherance of gambling and for gambling purposes."

On November 28, 1960, this notice was re-served upon plaintiffs as the result of a decision of the Delaware Chancery Court declaring Sec. 675 unconstitutional. The basis for the source of the new notice was Title 11, Section 674 Del.C., which reads:

"No person shall engage in the business of or receive compensation * * for the dissemination of or receive information in furtherance of gambling or for gambling purposes by means of private wire or wires or by means of a call service."

Upon defendant's agreement temporarily to abstain from terminating plaintiffs' service, plaintiffs then initiated what proved to be a very lengthy proceeding before the Delaware Public Service Commission resulting in a determination by that body that, based on the record before it, plaintiffs had been using defendant's telephone service in inter-

state commerce in furtherance of an illegal purpose. Accordingly, the Commission concluded that this defendant should not be enjoined from discontinuing service to plaintiffs. The Superior Court of Delaware affirmed the Commission, 196 A.2d 215 (1963), and the Delaware Supreme Court affirmed the Superior Court per curiam In Re Delaware Sports Service, 202 A.2d 568 (1964). Subsequently, the United States Supreme Court denied certiorari. Delaware Sports Service v. Diamond State Tel. Co., 379 U.S. 965, 85 S.Ct. 657, 13 L.Ed.2d 559 (1965).

A new attempt by defendant to terminate its telephone service to these plaintiffs was held in abeyance pending an effort by plaintiffs to enjoin defendant from effecting such discontinuance in the United States District Court for the District of Delaware. The plaintiffs' action for an injunction was predicated on Title 18, U.S.C. Section 1084(d).[1] Plaintiffs' principal argument was that the holdings by the Delaware Public Service Commission and the affirming opinions by the Delaware Superior and Supreme Courts were rendered ineffective for the reason that Section 1084(d), which had been passed by the Congress of the United States subsequent to the proceeding before the Commission, had preempted the field. This Court denied plaintiffs' bill for an injunction, 241 F. Supp. 847 (1965), the Third Circuit Court of Appeals affirmed, 355 F.2d 929 (1966), and, subsequently, the United States Supreme Court denied certiorari. 385 U.S. 817, 87 S.Ct. 38, 17 L.Ed.2d 55.

Following denial of certiorari by the United States Supreme Court, the Dela-

ware Attorney General, on November 9, 1966, again notified defendant to discontinue its service to plaintiffs and, accordingly, on November 21, 1966, defendant advised plaintiffs that it would terminate its service as of November 30, 1966, which it did.

This action for damages was brought pursuant to Title 47 U.S.C. Sections 206 and 207. The defendant takes the position that it cannot be liable because its service to plaintiffs was terminated in accordance with the provisions of Section 1084(d) which expressly exempts telephone companies from liability for damages in situations such as this. Plaintiffs contend to the contrary that defendant did not act in accordance with the requirements of the statute.

 Section 1084(d) is elsewhere quoted. It seems to be settled beyond quesion that a telephone company, upon being notified by any law enforcement agency to the effect that its facilities are or will be used to transmit or receive gambling information in interstate commerce in violation of law may, after reasonable notice, terminate its service with the alleged offending subscriber without liability in damages. Telephone News System, Inc. v. Illinois Bell Tel. Co., 220 F.Supp. 621. Also, compare Delaware Sports Service v. Diamond State Telephone Co., 241 F.Supp. 847 (D.C.Del. 1965). Upon receipt of such a notice from the telephone company, the subscriber, the plaintiffs here, if they chose, were free to seek an injunction in a state or federal court in which proceeding they would have had the alternative of at-

---

1. "(d) When any common carrier, subject to the jurisdiction of the Federal Communications Commission, is notified in writing by a Federal, State, or local law enforcement agency, acting within its jurisdiction, that any facility furnished by it is being used or will be used for the purpose of transmitting or receiving gambling information in interstate or foreign commerce in violation of Federal, State, or local law, it shall discontinue or refuse, the leasing, furnishing, or maintaining of such facility, after reasonable

notice to the subscriber, but no damages, penalty or forfeiture, civil or criminal, shall be found against any common carrier for any act done in compliance with any notice received from a law enforcement agency. Nothing in this section shall be deemed to prejudice the right of any person affected thereby to secure an appropriate determination, as otherwise provided by law, in a Federal court or in a State or local tribunal or agency, that such facility should not be discontinued or removed, or should be restored."

tempting to demonstrate [2] that they were not using their facilities illegally or, that they were no longer so using them. As to the first alternative, plaintiffs may or may not have been precluded by the findings of the Delaware Public Service Commission and subsequent affirmances thereof to the effect that they were illegally using their telephone service in interstate commerce. Delaware Sports Service v. Diamond State Telephone Co., supra. But in any event, plaintiffs made no attempt upon either ground to enjoin the defendant from terminating their service. Telephone News System, Inc. v. Illinois Bell Telephone Co., 220 F.Supp. at page 628.[3] Under such facts, the plaintiffs are without recourse unless their argument that defendant did not act in accordance with the provisions of Section 1084(d) is valid.

Plaintiffs say that defendant can terminate their service without fear of liability only after notice from a law enforcement agency informing them (a) that their facilities are or will be used for the purpose of transmitting or receiving gambling information (b) in interstate commerce and (c) in violation of law. They argue that the notices fail to conform with the requirements just outlined. The defendant joins issue on this point.

Prior to a discussion of this question, some consideration must be given to the broad, general purpose underlying Section 1084(d). Plaintiffs take the position that it must be strictly construed as if criminal or penal in character. This is not correct. The Section actually is a civil statute and is regulatory in character. Telephone News System, Inc. v. Illinois Bell Telephone Co., supra at p. 631.[4] Accordingly, a strict interpretation is not required. The Section calls for no specific form of notice and no particular language need be employed so long as, under the circumstances of the case, it seems reasonably clear that the notice of termination from the Telephone Company to the subscriber was predicated upon a written communication from a law enforcement agency to the effect that the utility's wires were being used or will be used for the purpose of transmitting or receiving gambling information in interstate or foreign commerce in violation of law. As before observed, when a telephone company threatens to terminate service under such circumstances, it is free of all liability and the subscriber, in order to protect itself, must act to enjoin the threatened discontinuance, in which case the telephone company has the burden of proof as to the facts alleged.[5]

Turning now to the facts of this particular case, the record discloses that Diamond State received four notices over a period of some seven or eight years from the office of the Attorney General of Delaware directing that it should terminate its service to this subscriber. The first notice of October 13, 1959, was given long before Section 1084(d) was even in existence and was predicated upon Section 675 of the Delaware Code. It has previously been referred to. Because Section 675 was thereafter declared unconstitutional by the Delaware Court of Chancery on September 8, 1960, 164 A.2d 254, a new notice was served by

---

2. Actually, the burden would be on the utility, see footnote immediately below.

3. "The plaintiff, to challenge the threatened discontinuation must file a complaint in the federal or state court * * *. The complaint need only set forth the threatened termination of facilities and assert its right to telephone service. The defendant in this type of proceeding bears the burden of proof and it must establish by a preponderance of the evidence that the service has been used in violation of the law."

4. "It thus appears that the purpose of the section 1084(d) is not penal but regulatory."

5. As a practical matter, the burden of proving the transmission of information, in interstate commerce, of gambling information in violation of law will probably be assumed by the law enforcement agency.

Diamond State upon plaintiffs on November 28, 1960. It reads:

"We have reasonable grounds to believe that the general telephone exchange and toll service which you now receive is being used in the business of disseminating information in furtherance of gambling and for gambling purposes.

"Section 674 of Title 11 of the Delaware Code forbids such operations and penalties are provided for violation of the section. Section 135 of Title 26 of the Delaware Code authorizes the Public Service Commission, after hearing, to require a public utility to furnish service. In view of these provisions of the law, you are notified that your telephone service will be terminated on December 15, 1960, unless before that time you have filed a complaint with the Public Service Commission seeking to have that body determine the nature and lawfulness of your operations and decide whether this company should be required by it to continue to provide telephone service to you for such use."

Even then, Section 1084(d) had not been passed. Nearly five years then elapsed before the proceeding before the Delaware Public Service Commission together with subsequent appeals was concluded.

Promptly thereafter, on August 7, 1964, the Attorney General of Delaware again gave notice to Diamond State:

"The Delaware Supreme Court has recently issued its decision In the Matter of Delaware Sports Service affirming the Superior Court opinion, which dismissed the appeal of Delaware Sports Service from the Order of the Public Service Commission.

"As you recall, the Commission's Order refused to direct Diamond State Telephone Company to continue service to Delaware Sports Service. As a result of the Supreme Court decision, the Commission's Order and the letter from the Attorney General of Delaware to your office, dated October 13, 1959, requesting that you revoke your contract with Delaware Sports Service, are in effect at the present time.

"As stated in the 1959 letter from this office, we have reasonable grounds to believe that Delaware Sports Service is engaged in the business of and receiving compensation for the dissemination of information in furtherance of gambling and for gambling purposes. For this reason, therefore, we request that you revoke your contract with Delaware Sports Service, 601 Tatnall Street, Wilmington, Delaware, and the individuals in charge thereof, and that you cease and desist from furnishing it any further service.

"We request that your discontinuance of services not take place until ten (10) days from the date hereof. Further court action by Delaware Sports Service would stay discontinuance of your services until Sports Service has exhausted all its court remedies of appeal and review. If Delaware Sports Service seeks review of state court decisions in the United States Supreme Court within the ten-day period from the date of this letter, we will notify you to that effect.

"Please let us know if you have any questions regarding the matter."

By now, although not referred to, Section 1084(d) had become law.

Because of the proceeding to enjoin the termination of service brought in this Court, a further delay of two years occurred until certiorari was denied by the United States Supreme Court in October, 1966.

On November 9, 1966, the Delaware Attorney General for the fourth time notified Diamond State to terminate plaintiffs' service in this language:

"The United States Supreme Court has denied the request of Delaware Sports Service to review the above-captioned case. Counsel for Delaware Sports Service has not requested the Court to reconsider its decision within the time allowed by the Court rules, and the Court has issued its final order to the United States Court of

Appeals for the Third Circuit, whereby the lengthy litigation in this case is terminated.

"The original directive of this office is, therefore, in effect authorizing you to terminate immediately and forthwith all telephone service to Delaware Sports Service."

The plaintiffs contend that this and all the other preceding notices are defective for a variety of reasons:

(1) The notice of November 9, 1966, does not (a) refer to Section 1084 (d), fails (b) to specify that plaintiff was using its telephone facilities for the purpose of transmitting or receiving gambling information (c) in interstate commerce, and (d) in violation of law;

(2) The notice of November 28, 1960, was equally defective and, moreover, was given at a time when Section 1084(d) was not in existence.

(3) The notice of October 13, 1959, although complying generally with the terms of Section 1084(d) was given before that section became law.

■ The question of the validity of these notices, if Section 1084(d) were a criminal statute, is not before this Court. As elsewhere stated, this Section is a civil statute which is regulatory in nature. Therefore, I am of the view that it should be liberally construed and, so interpreted, the notices from the Attorney General were adequate.

■ True, the notice of November 9, 1966, could have been more carefully drawn. What it did do, however, was to refer back to, and for practical purposes incorporate, the notices of October 13, 1959, November 28, 1960 and August 7, 1966. It should be regarded as having opened up, and incorporated within its terms, the entire proceeding beginning on October 13, 1959, the subsequent lengthy hearing before the Commission, the Commission's findings of fact and conclusions, and the affirmances thereof, and subsequent notices from the Attorney General.[6]

Thus viewed, the notice of November 9, 1966[7] should be interpreted as a notice from a law enforcement agency that plaintiffs' facilities were being used for the purpose of transmitting or receiving gambling information in interstate commerce in violation of law.[8]

6. I do not regard the notices of Diamond State to plaintiffs as of any real importance except to the extent that Sec. 1084(d) requires termination of service "after reasonable notice." In my view, in the light of the factual background here, the notice of November 21st stating that service would be terminated on November 30th, was reasonable.

7. "The original directive of the office is, therefore, in effect authorizing you to terminate immediately and forthwith all telephone service to Delaware Sports Service.
"Ruth M. Ferrell,
Deputy Attorney General"

8. "Based on the evidence in the record before us, we are constrained to find that petitioner's service under its present arrangement was being used to aid illegal gambling in several states including but not limited to New York, New Jersey, Maryland and Delaware." PSC Docket 328. Sept. 12, 1962.
"A fair reading of all the testimony on which the Commission relied establishes that it was justified in reaching its conclusion that Delaware Sports Service disseminated flash results of horse races primarily for the use of bookmakers." 196 A.2d 215 (Del. Superior Ct. affirming Commission opinion).
"The probative evidence in the record * * * clearly shows that * * * the Commission was more than justified in concluding that Sports Service was primarily set up to serve bookmakers by furnishing them information essential to the conduct of their activities." (196 A. 2d 215 at 223, affirming Commission's opinion).

That at least the notice of November 9, 1966, from the Attorney General to Diamond State directing it to terminate plaintiffs' service contemplated the applicability of Section 1084(d) is clear from the brief of the Attorney General filed in this Court in the 1964–65 injunction proceeding; Delaware Sports v. Diamond States, supra:

"It is also clear that the language used in the notices of the Attorney General to the telephone company is not confined to 11 Del.C. § 674 but fully meets the requirements of 11 Del. C. § 674 and 18 U.S.C. § 1084(d)." P. 54, Brief of Attorney General; Filed October 30, 1964.

Nor were plaintiffs in any way prejudiced by the somewhat cryptic notice from the Attorney General to Diamond State. Plaintiffs knew all the facts, the findings of the Commission, and the various affirmances thereof. So did Diamond State. So, of course, did the Attorney General's office. Plaintiffs could well have sought an injunction promptly upon receiving the notice from Diamond State dated November 21, 1966, that their service would be cut off on November 30th. They did not. Instead, they rely on the unpersuasive argument, wholly unsupported by the record, that Diamond State terminated their service prior to November 30th before plaintiffs could file a bill for an injunction. In that connection, Diamond State made an offer to prove at argument that service was not terminated until November 30th, but this was felt to be unnecessary because plaintiffs' assertion was without basis of support in the record.

■ It is my conclusion that the defendant, Diamond State Telephone Co., terminated its service to these plaintiffs in accordance with the provisions of Section 1084(d) upon receipt of a notice from the Delaware Attorney General which substantially met the requirements of the statute. Accordingly, plaintiffs have no recourse to damages and the motion for summary judgment is granted.