**CHEYENNE SALES, LTD.**

v.

**WESTERN UNION FINANCIAL SERVICES INTERNATIONAL.**

**Civil Action No. 97–8059.**

United States District Court,
E.D. Pennsylvania.

June 1, 1998.

David L. Bargeron, Philadelphia, PA, for Plaintiff.

Kenneth A. Murphy, Philadelphia, PA, for Defendant.

## MEMORANDUM

DALZELL, District Judge.

Plaintiff Cheyenne Sales, Limited, a Jamaica business, seeks to enjoin Western Union from terminating, on one-day's notice, its "Quick Collect" money transfer service. The parties have filed cross-motions for summary judgment. For the reasons stated below, we will grant defendant's motion and enter judgment against plaintiff.

## I. Factual Background [1]

The parties agree on the following facts. Cheyenne Sales, Ltd. ("Cheyenne") contracted with Western Union Financial Services International ("Western Union") to set up a "Quick Collect" account, which is "designed to assist commercial business entities in receiving direct payments from their various account debtors." Joint Stip. at ¶ 3. In

---

1. In evaluating the evidence on a motion for summary judgment, we view the record in the light most favorable to the non-movant and resolve all doubts as to existence of an issue of material fact against the movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); see, e.g., Gans v. Mundy, 762 F.2d 338, 340 (3d Cir.), cert. denied, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985). Our factual account, however, is taken wholly from the joint stipulation between the parties, and thus we are not presented with questions of disputed material fact.

both applications for the service,[2] Cheyenne represented that it was a garment and haberdasher wholesaler, *id.* at ex. A, at 3–4, and also estimated that it would conduct 500–999 Quick Collect transactions per month. *Id.* at ex. A, at 1, 5. The service contract between the parties provided that it could be "terminated by either party on thirty days' written notice." *Joint Stip.* at ex. A, at 7.

Cheyenne now admits that "its only business was receiving money through the Quick Pay Service," *id.* at ¶ 8; *see also Mem. Supp. Prelim. Inj.* at 2, presumably for distribution to customers such as English Sports Betting, with whom Cheyenne admits it shares a "symbiotic relationship." *Id.; see also Joint Stip.* at ¶ 14. Between April and November, 1997, Cheyenne received in excess of 18,200 Quick Collect transactions from all over the United States—an average of more than 2,275 per month—including more than 2,000 transactions from the state of Florida. *Id.* at ¶ 15.

The Florida Attorney General, concerned that citizens of that state were using Western Union's service to transmit funds for illegal offshore gambling, *see* Fla. Stat. §§ 849.14, 849.25; *see also* 18 U.S.C. § 1084, "contacted Western Union sometime prior to December 22, 1997, and requested that Western Union voluntarily terminate a number of its customers, including Cheyenne." *Joint Stip.* at ¶ 9. On December 22, 1997, Western Union entered into an "Agreement of Voluntary Cooperation" with the state of Florida whereby, *inter alia,* Western Union "agree[d] to implement procedures designed to prevent funds from being transferred from Florida through Western Union's Quick Pay service to" a list of Western Union Quick Pay subscribers that Florida provided. *Joint Stip.* at ex. C, at 3. That same day, "Western Union issued Cheyenne a letter informing Cheyenne of the Agreement with the Florida Attorney General, and notifying Cheyenne that effective December 23, 1997, Western Union no longer would permit payments to be sent from persons within the United States to Cheyenne via Western Union's Quick Pay service." *Def.'s Br. Supp. Summ. J.* at 7 (citing *Joint Stip.* at ¶ 11).

On December 29, 1997, believing Western to be acting in an "arbitrary and capacious manner,"[3] *Compl.* at ¶ 12, Cheyenne filed this action, seeking first to preliminarily enjoin Western Union from terminating Cheyenne's Quick Pay account "during the penance of this action."[4] *Id.* at 4, at ¶ 1. On December 30, 1997, Judge Eduardo C. Robreno, sitting as Emergency Judge in our stead, denied plaintiff a temporary restraining order. Cheyenne now seeks a permanent injunction reversing Western Union's termination of its service, and "such other and further relief as the Court deems proper." *Id.* at 5, at ¶ 4. Since we conclude otherwise, we will enter judgment in defendant's favor.

## II. *Legal Analysis*[5]

" 'In deciding whether a permanent injunction should be issued, the court must deter-

2. Cheyenne first applied for and received the Quick Collect service on August 1, 1996. The service was subsequently renewed on January 10, 1997. *Joint Stip.* at ¶ 5. According to Western Union, Quick Collect is also known as "Quick Pay" in the United States, and the parties use the two names interchangeably.

3. *Compare* II Oxford English Dictionary at 856 (2d ed. 1989)(defining *capacious* as, *inter alia,* "[o]f such size as to take in or hold ... roomy, spacious, wide") *with id.* at 869 (defining *capricious* as, *inter alia,* "[f]ull of, subject to, or characterized by caprice; guided by whim or fancy rather than by judgement or settled purpose; whimsical, humoursome ... [s]ubject to change or irregularity, so as to appear ungoverned by law").

4. *Compare* XI Oxford English Dictionary at 462 (2d ed. 1989)(defining *penance* as, *inter alia,* "[t]he performance of some act of self-mortification or undergoing of some penalty, as an expression of penitence; any kind of religious discipline, whether imposed by ecclesiastical authority, or voluntarily undertaken, in token of repentance and by way of satisfaction for sin") *with id.* at 467–68 (defining *pendency* as "[t]he state or condition of being pending or continuing undecided, or awaiting settlement").

5. Both parties have analyzed this action within the framework of a permanent injunction. While we are uncertain that this is the precise form that our equity jurisdiction would take if exercised in this case, *see infra* at 8, our conclusion that Cheyenne is not entitled to a permanent injunction here *a fortiari* precludes our award of alter-

mine if the plaintiff has actually succeeded on the merits (i.e. met its burden of proof). If so, the court must then consider the appropriate remedy.'" *ACLU v. Black Horse Pike Reg. Bd. of Educ.*, 84 F.3d 1471, 1477 n. 3 (3d Cir.1996)(quoting *CIBA–GEIGY Corp. v. Bolar Pharm. Co., Inc.*, 747 F.2d 844, 850 (3d Cir.1984)).[6] In addition, other district courts in our District have also considered whether "the court's exercise of equity jurisdiction is proper," *Ruscavage v. Zuratt*, 821 F.Supp. 1078, 1081 (E.D.Pa.1993); *see also Bess v. Correctional Officers c/o Sgt. Brent Post*, No. Civ. A. 96–6315, 1997 WL 509817, at *1 (E.D.Pa. Aug. 14, 1997)(citing *Ruscavage*,) a prerequisite we also think logical and therefore adopt.

### A. *Equity Jurisdiction and Choice of Remedy*

We have equity jurisdiction over this action if there is no adequate remedy at law, there is actual threatened injury, and no equitable defense precludes our exercise of jurisdiction. *Ruscavage*, 821 F.Supp. at 1081.

■ Western Union argues that Cheyenne has an adequate remedy at law because (1) Cheyenne has alleged that it is losing $1,500 a day due to termination of the Quick Collect service, *see Joint Stip.* at ¶ 16; and (2) the contract between the parties that governs the Quick Collect service provides that it "can be terminated by either party on thirty days' written notice." *Id.* at ex. A, at 7, at ¶ 9. Thus, Western Union argues that the damages, if any, that Cheyenne may recover are $1,500 for each day Western Union failed to give notice pursuant to the contract, or $43,500.

Cheyenne's contract remedy is foreclosed, however, by the terms of 18 U.S.C. § 1084(d). Under the terms of that statute, Cheyenne's sole possible remedy in this action is for restoration of the Quick Collect service:

> When any common carrier, subject to the jurisdiction of the Federal Communications Commission, is notified in writing by a Federal, State, or local law enforcement agency, acting within its jurisdiction, that any facility furnished by it is being used or will be used for the purpose of transmitting or receiving gambling information in interstate or foreign commerce in violation of Federal, State, or local law, it shall discontinue or refuse, the leasing, furnishing, or maintaining of such facility, after reasonable notice to the subscriber, *but no damages, penalty or forfeiture, civil or criminal, shall be found against any common carrier for any act done in compliance with any notice received from a law enforcement agency.* Nothing in this section shall be deemed to prejudice the right of any person affected thereby to secure an appropriate determination, as otherwise provided by law, in a Federal court or in a State or local tribunal or agency, that such facility should not be discontinued or removed, or should be restored.

*Id.* (emphasis added). The parties do not dispute that Western Union terminated Cheyenne's Quick Collect service as a result of being contacted by the Florida Attorney General. Thus, Western Union's actions are protected *in toto* from plaintiff's efforts to secure money damages for loss of the Quick Collect service. *See Delaware Sports Serv. v. Diamond State Tel. Co.*, 241 F.Supp. 847, 851 n. 8 (D.Del.1965), *aff'd mem.*, 355 F.2d 929 (3d Cir.)(*per curiam*), *cert. denied*, 385 U.S. 817, 87 S.Ct. 38, 17 L.Ed.2d 55 (1966)(pointing out that § 1084(d) "provides a means of forcing ... utilities to terminate service and at the same time removes the risk of a suit for damages from the utility").

Section 1084(d) is not, however, a defense to equity jurisdiction. The last sentence of

---

native equitable relief. Thus, our analysis under the permanent injunction framework suffices for the purpose of this Memorandum.

**6.** Although our Court of Appeals has recognized that "different views have been expressed from time to time as to the need for establishing irreparable harm as a predicate to the entry of a permanent injunction," it has yet to resolve the

issue. *Temple Univ. v. White*, 941 F.2d 201, 213 (3d Cir.1991), *cert. denied sub nom. Snider v. Temple Univ.*, 502 U.S. 1032, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992). Because we conclude that plaintiff cannot succeed on the other merits of its claim, we need not predict our Court of Appeals's answer to this question.

§ 1084(d) preserves Cheyenne's equitable right "to secure an appropriate determination, as otherwise provided by law, in a Federal court ... that such facility should not be discontinued or removed, or should be restored." *Id.* The only question before us, then, is whether Cheyenne is entitled to equitable relief from termination of its service "as otherwise provided by law." 18 U.S.C. § 1084(d).

■ Cheyenne seeks to invoke our equity jurisdiction by arguing that, in terminating its Quick Collect service, Western Union violated 47 U.S.C. § 202(a), which makes it unlawful for "any common carrier to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage." *Id.* Although Cheyenne cites only 47 U.S.C. § 202(a) as a basis for relief in this action, that statute itself provides no remedy—equitable or legal—for violation of its provisions. *See id.* We presume, therefore, that Cheyenne properly seeks to restore its Quick Collect service pursuant to 47 U.S.C. § 406, the statute that empowers courts "to issue a writ or writs of mandamus against [a carrier] commanding such carrier to furnish facilities for such communication or transmission to the party applying for the writ." *See, e.g., Palermo v. Bell Tel. Co. of Pa.,* 415 F.2d 298, 299 (3d Cir.1969)(*per curiam*)(noting that plaintiff relies on § 406 for its claim to injunctive relief for defendant's violation of § 202(a)); *Mical Communications, Inc. v. Sprint Telemedia, Inc.,* 1 F.3d 1031, 1035 (10th Cir.1993)(same).

Writs of mandamus were abolished in the District Courts by Fed.R.Civ.P. 81(b), but that Rule allows Cheyenne "to substitute a motion for an injunction for a prayer for mandamus, thus relieving the necessity of pleading in relator form...." *MCI Communications Corp. v. American Tel. & Tel. Co.,* 369 F.Supp. 1004, 1025 (E.D.Pa.1973), *vacated on other grounds,* 496 F.2d 214 (3d Cir.

1974) (citing *McBride v. Western Union Tel. Co.,* 171 F.2d 1 (9th Cir.1948)). Thus, we find that we have equitable jurisdiction over this action, and that the sole possible remedy available to Cheyenne is that of restoration of Quick Collect service pursuant to 47 U.S.C. § 406, as reserved by 18 U.S.C. § 1084(d).

**B. *Success on the Merits***

■ Although writs of mandamus have been abolished, the substantive rights of the parties are still governed by the principles that formerly applied in mandamus cases. *See id.* (citing *Rines v. Com. of Pennsylvania,* 285 F.Supp. 391 (E.D.Pa.1968)); *see also* Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 3134 at 474–75 (1997) ("The same principles that governed the former writ now govern attempts to secure similar relief by action or motion.") Therefore, in order to merit injunctive relief against Western Union, Cheyenne must demonstrate that the defendant's duties under the Act—in this case, § 202(a)—are "clear and unequivocal." [7] *Mical,* 1 F.3d at 1036; *Bell Tel. Co. of Pa. v. F.C.C.,* 503 F.2d 1250, 1263 (3d Cir.1974), *cert. denied sub nom. American Tel. and Tel. Co. v. F.C.C.,* 422 U.S. 1026, 95 S.Ct. 2620, 45 L.Ed.2d 684 (1975) (applying "clear and unequivocal" mandamus standard to § 406).

In canvassing the caselaw of our Circuit for guidance, we have discovered a helpful precedent that escaped the parties' notice, *Palermo v. Bell Tel. Co. of Pa.,* 415 F.2d 298 (3d Cir.1969)(*per curiam*), which presents a factual scenario remarkably similar to this one. In that case, the Palermos brought suit against their telephone company and the Philadelphia District Attorney under 47 U.S.C. § 406 and § 202(a), challenging the telephone company's termination of its service after receipt of notice from the District

---

**7.** As the Supreme Court stated in construing § 23 of the Interstate Commerce Act, a section comparable to § 406:

> The remedy afforded by that section in the cases which it embraces must be limited either to the performance of duties which are so plain and so independent of previous administrative action of the Commission as not to

require a prerequisite exertion of power by that body, or to compelling the performance of duties which plainly arise from the obligatory force which the statute attaches to orders of the Commission....

*Baltimore & O.R. Co. v. U.S ex rel. Pitcairn Coal Co.,* 215 U.S. 481, 499–500, 30 S.Ct. 164, 171, 54 L.Ed. 292 (1910).

Attorney that the service was being used in violation of banking and gambling laws of Pennsylvania. Our Court of Appeals, in affirming the District Court's refusal to reinstate service, held that where (1) the telephone company was obligated to terminate service upon notification from the District Attorney that plaintiffs were using the telephone service in violation of the gambling laws of Pennsylvania, and (2) the telephone company acted reasonably in terminating the plaintiffs' telephone service, plaintiffs had no cause of action under § 202(a). Thus, applying *Palermo* to this case, in order to show that it is entitled to court-ordered reinstatement of its service, Cheyenne must show that Western Union's termination was (1) not required under the law, and (2) carried out unreasonably. *Palermo*, 415 F.2d at 298.

■ Cheyenne cannot clearly and unequivocally show that Western Union's termination of its Quick Collect service was not required by law. Cheyenne appears to accept that, at a minimum, the Agreement of Voluntary Cooperation between Western Union and the Florida Attorney General constituted reasonable grounds for Western Union to terminate Cheyenne's Quick Pay service as to transactions between it and the state of Florida. *See Pl.'s Mot. Summ. J.* at 8, 9.[8] Although unclear from plaintiff's briefs,[9] our best—and perhaps overly-charitable—reading of Cheyenne's argument is that Western Union unjustifiably and unreasonably terminated all Quick Collect service—and not just as to Florida—to Cheyenne in response to its agreement with the Florida Attorney General.

We disagree. "The right and duty of a telephone, telegraph, or other wire service company to refuse service used, or to be used, in furtherance of illegal gambling operations, has been generally recognized," and is well-established. A.L. Schwartz, Annotation, *Right or Duty to Refuse Telephone, Telegraph, or Other Wire Service in Aid of Ille-*

*gal Gambling Operations,* 30 A.L.R.3d 1143, 1151–52 (1970 & Supp.1997); *see also* 74 Am.Jur.2d Telecommunications § 58 (1974) ("Discontinuance or Refusal of Service to Persons Engaged in Illegal Activities; Bookies"). State and federal courts across the country have upheld a carrier's termination of wire service upon notice from either a state or federal law enforcement official that a customer is using the service in furtherance of illegal gambling operations. *See, e.g., Palermo,* 415 F.2d 298; *DiGiacomo v. Diamond State Tel. Co.,* 356 F.Supp. 1063 (D.Del.1973); *Palma v. Powers,* 295 F.Supp. 924, 940 (N.D.Ill.1969); *Hamilton v. Western Union Tel. Co.,* 34 F.Supp. 928 (N.D.Ohio 1940); *Schwartz,* 30 A.L.R.3d at 1154–55 & Supp. at 517–18; 74 Am.Jur. § 58. Indeed, given that the federal government and other states across the country have passed laws (1) prohibiting gambling over telephone and wire services, and (2) allowing—and in some cases mandating—termination of service under these circumstances, *see, e.g.,* Ohio Rev. Code Ann. § 2915.02 (Baldwin 1989); N.Y.Gen.Oblig. Law § 5–401 (McKinney 1989); *see generally* 74 Am.Jur. § 58 at n. 32, it is unsurprising that Western Union decided to terminate all service to Cheyenne. Moreover, we note that 18 U.S.C. § 1084(d) *requires* a carrier to "discontinue or refuse" service without limitation to a customer upon notice from a federal, state, or local law enforcement agency. Thus, the legality of Western Union's action does not depend for its scope on the terms of the Agreement of Voluntary Cooperation with the Florida Attorney General. Western Union was legally and logically justified in terminating all Quick Collect service to Cheyenne.

■ Cheyenne also objects to the fact that it was not provided with fair notice of the termination of its Quick Collect service, and thus argues that Western Union's actions were unreasonable. 18 U.S.C. § 1084

---

8. Fla. Stat. § 849.25 has survived state and federal constitutional challenge in the Florida Supreme Court, *Zuppardi v. Florida,* 367 So.2d 601 (Fla.1978)(en banc); *Vickery v. Florida,* 539 So.2d 499 (Fla.Dist.Ct.App.1989), *rev. den. sub nom., Nunnari v. Florida,* 549 So.2d 1014 (Fla. 1989), as has Fla. Stat. § 895.02. *Id.*

9. *See, e.g., id.* at 9 n. 4 ("Cheyenne contends that Western Union is a common carrier and thus subject to the provisions of 47 U.S.C. § 202.... However, for the purposes of this Summary Judgment Motion it is the equity involved that is at issue, not 47 U.S.C. § 202.").

does by its plain terms require "reasonable notice to the subscriber." *Id.* Failure to receive such reasonable notice, however, does not violate Cheyenne's due process rights.[10] *See Hatteras v. Southwestern Bell Tel. Co.,* 774 F.2d 1341 (5th Cir.1985); *Lopez v. New Jersey Bell Tel. Co.,* 51 N.J. 362, 240 A.2d 670 (1968); *Taglianetti v. New England Tel. & Tel. Co.,* 81 R.I. 351, 103 A.2d 67 (1954). In light of Cheyenne's (1) admitted involvement in gambling activities—an improper use of the Quick Collect system—and (2) the unqualified thirty-day termination in the contract between Cheyenne and Western Union, defendants' defective notice does not provide clear and unequivocal grounds to restore Cheyenne's Quick Collect service.

---

10. Assuming that the Jamaica-based company in fact has due process rights under the Constitution of the United States, a legal thicket we find unnecessary to enter.