### Rubin, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued December 14, 1961.   Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*William Brodsky,* for appellant.

*Daniel F. Joella,* Assistant Counsel, with him *Joseph I. Lewis,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*James L. Stern,* Deputy City Solicitor, with him *Ellis A. Horwitz,* Assistant City Solicitor, and *David Berger,* City Solicitor, for City of Philadelphia, intervening appellee.

*E. Everett Mather,* with him *John B. King,* for Bell Telephone Company of Pennsylvania, intervening appellee.

OPINION BY RHODES, P. J., January 16, 1962:

On March 31, 1961, Betty Rubin filed a complaint with the Pennsylvania Public Utility Commission alleging that respondent, Bell Telephone Company of Pennsylvania, refused to furnish telephone service to her at her residence, 153 West Carpenter Lane, Philadelphia, and asking the commission to order restoration of such service. The telephone company filed an answer admitting its refusal to furnish service since, in view of the history of complainant and her husband, Maurice Rubin, showing arrests and convictions for bookmaking, it had reason to believe that the service would be used in maintaining an illegal lottery and bookmaking. A hearing on the complaint and answer was held on May 8, 1961, and on July 10, 1961, the commission entered an order dismissing the complaint. From this order complainant appealed.

At the hearing appellant testified that there is presently no telephone service at her home at 153 West Carpenter Lane, and none available nearby; that she is in poor health, having undergone partial stomach removal, and is suffering from ulcerated colitis; and

that the state of her health prevents her from practicing her profession of licensed beautician. Appellant also stated that she makes flower arrangements and needs a telephone, not only for health and safety reasons but also for business purposes. Appellant lives with her husband, Maurice Rubin, at 153 West Carpenter Lane.

The proceedings on the husband's complaint, filed on July 31, 1957, seeking telephone service at the same address, and the action of the commission in affirming the telephone company's refusal to install service at that time were made a part of the record before the commission on the present complaint.

The utility's special agent, C. R. Kulp, testified at length. On investigation this witness found that on several occasions between 1952 and 1956 appellant was arrested on charges of bookmaking, pool selling, and illegal lottery, and convicted at least twice during this period of maintaining an illegal lottery.

Appellant's husband also had a long record of arrests and convictions for violation of the penal code involving illegal lottery and bookmaking, and on four occasions since April 15, 1959, had been arrested on such charges.

The record shows that police raids conducted on April 18 and 22, 1959, disclosed that bookmaking and pool selling operations involving use of telephone service were being conducted at appellant's premises. Police raids also had been made at these premises on August 10, 1955, and March 21, 1956, resulting in conviction of appellant and her husband for pool selling and maintaining an illegal lottery. Following these raids telephone service was discontinued. Thereafter, on August 6, 1958, appellant and her husband signed an affidavit that telephone service would not be used for any illegal purpose, and the telephone company restored service. However, following the request of the Philadelphia Police Department and after the raids on April 18 and

April 22, 1959, telephone service to these premises was again and finally discontinued on May 4, 1959. Thereafter the telephone company received numerous requests for service at 153 West Carpenter Lane by various persons other than appellant or her husband.

Mr. Kulp, the special agent, was informed by the police that appellant's husband was arrested and charged with bookmaking in two raids, September 2, 1960, and October 3, 1960, at locations in Philadelphia far removed from Carpenter Lane, where Mr. Rubin had access to a telephone. The raid on October 3, 1960, resulted in his conviction for illegal lottery. The police of Philadelphia, through Inspector Trimmer, testified in opposition to restoration of telephone service to appellant at the Carpenter Lane address.

Appellant claims that the utility, by refusing to furnish telephone service at her residence, has subjected her to an unreasonable prejudice or disadvantage in violation of its duty to serve the public.

Section 402 of the Public Utility Law of May 28, 1937, P.L. 1053, article IV, 66 PS §1172, provides, in part: "No public utility shall, as to service, make or grant any unreasonable preference or advantage to any person, corporation, or municipal corporation, or subject any person . . . to any unreasonable prejudice or disadvantage." The principle applicable here was clearly set forth in *Pennsylvania Publications, Inc., v. Pennsylvania Public Utility Commission,* 349 Pa. 184, 188, 189, 36 A. 2d 777, 779, 153 A.L.R. 457, as follows: "It is well established that it is the duty of a telephone company to furnish service and facilities without discrimination in favor of or against anyone who will pay the applicable tariff rates and abide by the reasonable regulations of the utility: Bell Teleph. Co. v. Commonwealth, 2 Sadler 299; Commercial U. Tel. Co. v. N. E. Telephone & Telegraph Co., 61 Vt. 241, 17 A. 1071; Western Union Tel. Co. v. State, 165 Ind. 492, 76 N.E.

100. This obligation, however, is limited to lawful service, for obviously to compel a public utility, under the guise of impartial regulation, to furnish service and facilities for purposes which are illegal would be contrary to public policy. Therefore, public service companies will not be compelled to furnish service to 'bucket-shops' (Western Union Tel. Co. v. State, supra; Smith v. Western Union Tel. Co., 84 Ky. 664, 2 S. W. 483) ; or to bawdy houses (Godwin v. Carolina T. & T. Co., 136 N. C. 258, 48 S. E. 636) ; or to subscribers who use their telephones to receive and register bets on horse races in violation of law (People ex rel. Restmeyer v. New York Telephone Co., 159 N.Y.S. 369, 173 App. Div. 132)."

Although this precise question is apparently one of first impression in Pennsylvania, it is well settled that a telephone company may refuse to install a telephone where it appears reasonably certain, under all the circumstances, that the subscriber will use the service in conducting an illegal operation or business, and the company's action is not a violation of the utility's duty to serve the public generally, or of a statute prohibiting unjust discrimination.[1] 86 C.J.S., pp. 85, 86, §72b(1) ; 52 Am. Jur. §86, pp. 114, 115; *Leitner v. New York Telephone Company,* 277 N.Y. 180, 13 N.E. 2d 763, reargument denied, 278 N.Y. 598, 16 N.E. 2d 118. A public utility has not only the right, but a duty to refuse to render service for criminal

---

[1] The Bell Telephone Company of Pennsylvania filed Tariff No. 1, §1, par. 20, with the Pennsylvania Public Utility Commission, which reads as follows:

"Service is furnished subject to the condition that it will not be used for any unlawful purpose. Service will not be furnished if any law enforcement agency, acting within its jurisdiction, advises that such service is being used in violation of the law, or if the Telephone Company receives other evidence that service is being or will be so used."

purposes.[2] *Andrews v. Chesapeake & Potomac Telephone Company*, (D.C.) 83 F. Supp. 966, 968; *Pike v. Southern Bell Telephone and Telegraph Company*, 263 Ala. 59, 81 So. 2d 254, 255; *State v. Western Union Telegraph Company*, 12 N.J. 468, 97 A. 2d 480, 486; *Paterson Publishing Company v. New Jersey Bell Telephone Company*, 21 N.J. 460, 122 A. 2d 599, 602; *Taglianetti v. New England Telephone and Telegraph Company*, 81 R.I. 351, 103 A. 2d 67; 70 A.L.R. 894, 902. The test is whether, under all the circumstances, there is evidence to support the contention of the utility that it had reasonable grounds to believe the service would be used illegally. *Pennsylvania Publications, Inc., v. Pennsylvania Public Utility Commission*, supra, 349 Pa. 184, 191, 36 A. 2d 777, 153 A.L.R. 457. See *Rosenthal v. New York Telephone Company*, 141 N.Y.S. 2d 459.

The outcome of a criminal charge against the subscriber, where the defendant must be proved guilty beyond a reasonable doubt, is not controlling upon whether the utility acted reasonably in refusing service under all the circumstances. *People ex rel. Restmeyer v. New York Telephone Company*, 173 App. Div. 132, 134, 159 N.Y.S. 369, 371; *Rosenthal v. New York Telephone Company*, supra, 141 N.Y.S. 2d 459; *In re Rosner*, 205 N.Y.S. 2d 476, 477. The utility cannot refuse service to subscribers capriciously, arbitrarily, or upon evidence which is no more than rumor, suspicion, or surmise. Cf. *Shillitani v. Valentine*, 184 Misc. 77, 269 App. Div. 568, 56 N.Y.S. 2d 210, affirmed, 269 N.Y. 161, 71 N.E. 2d 450. Admittedly the utility is not an adjunct of the police department or district attorney's office in the enforcement of the criminal law. At the same time it may and should refuse service to a subscriber where the evidence shows a reason-

---

[2] See Act of December 1, 1938, Sp. Sess., P. L. 111, §2, 66 PS §1702.

able certainty that such service will be used in direct violation of law. Judged by these established standards, the order of the commission in this case dismissing appellant's complaint and affirming the company's refusal to furnish telephone service to this party at the time of the order must be affirmed.

A recital of the evidence offered by the utility at the hearing on the complaint, as reviewed earlier in this opinion, is ample to support a conclusion that the utility acted reasonably under the circumstances in refusing the service to appellant. The credibility of appellant, and her failure to bring witnesses to corroborate the medical and employment aspects of her contentions were matters for determination by the commission as a fact finding body. *Reeder v. Pennsylvania Public Utility Commission,* 192 Pa. Superior Ct. 298, 302, 162 A. 2d 231.

Appellant contends that the written reports and oral testimony of the police, made available to the utility, were hearsay and inadmissible against her in the present proceeding before the commission. The reports of the police, made available to the telephone company, were not offered to prove the truth of the statements therein, but only to show the fact that such reports were made by a public agency to the utility. Cf. Pennsylvania Evidence, Henry, Vol. 1, §441, pp. 434, 435. The utility is free to consult with the police or any other law enforcement agency, but the determination must be made by the utility itself upon all the facts presented. Cf. *Shillitani v. Valentine,* supra, 296 N.Y. 161, 71 N.E. 2d 450, 451. Admission of the police reports was not improper, and was relevant in determining whether the company's action, under all the circumstances, in refusing service was reasonable. The authorities make it clear that a request by the police that telephone service be discontinued, while relevant evidence, is not controlling. The hearing be-

fore the commission to determine whether the utility acted reasonably under all the circumstances affords due process of law. In fact, appellant does not raise any constitutional issue on this appeal.

There was ample evidence to warrant denial of service. Appellant as occupier of the premises must have been aware of the disregard of the criminal laws. She had previously signed an affidavit, on August 6, 1958, stating that the telephone then installed would not be used for any illegal purpose, but it subsequently was used for such purposes. It could be concluded from all the evidence that her uncorroborated testimony was not credible and that her application was not in good faith, and that there was reasonable certainty of such repeated activities if appellant's complaint were sustained and service restored.

The order of the commission dismissing the complaint was fully supported by evidence, and we do not find any abuse of discretion on the part of the commission in entering such order.

The order of the commission is affirmed.