Fred **PALMA**, Ralph Mamolella, and Frank Mamolella, Plaintiffs,

v.

Richard **POWERS**, Joseph Healy, Patrick McGann, John Tobin and Illinois Bell Telephone Company, a corporation, Defendants.

**No. 66 C 437.**

United States District Court
N. D. Illinois, E. D.

Jan. 16, 1969.

926

Harry R. Booth, Chicago, Ill., for plaintiffs.

Raymond F. Simon, Corp. Counsel, Benjamin Novoselsky, Asst. Corp. Counsel, Chicago, Ill., for individual defendants.

Donald H. Sharp, James R. Bryant, Jr., Douglas G. Brown and Thomas R. Phillips, Chicago, Ill., for Illinois Bell Telephone Co.

## OPINION

WILL, District Judge.

Plaintiffs bring this action under the Civil Rights Act, 42 U.S.C. §§ 1983, 1985. They seek recovery of damages allegedly sustained by them as a result of various acts committed by the defendants which plaintiffs contend deprived them of rights guaranteed by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States. In addition to actual damages, plaintiffs seek punitive damages and such injunctive relief "as may be necessary to prevent the defendants or any one of them from again violating their rights." The jurisdiction of this Court is invoked on the basis of 28 U.S.C. §§ 1331, 1343.

Plaintiffs Ralph Mamolella and Frank Mamolella are partners in a retail auto parts business in Chicago, Illinois. They operate two stores under the name of "West Side Auto Parts" located at 3001 South Kedzie Avenue and 1132 South Kedzie Avenue. Plaintiff Fred Palma is an employee of this auto parts business. Defendants Richard Powers, Joseph Healy, John Tobin, and Patrick McGann are police officers in the employ of the City of Chicago. Defendant Illinois Bell Telephone Company [hereinafter referred to as "Illinois Bell"] is a corporation organized under the laws of Illinois and is engaged in providing telephone service in Chicago and other areas of Illinois.

Illinois Bell is the only telephone company rendering service in Chicago. West Side Auto Parts has continuously utilized the services of Illinois Bell since 1948 at all locations at which it has been doing business. Immediately prior to January 14, 1966, the business had three telephone lines, one main line and two extensions, serving 3001 South Kedzie and a private line between that location and its other store at 1132 South Kedzie. There were three lines, one main line and two extensions, in addition to the private line, at 1132 South Kedzie. Both main lines were listed in the current alphabetical directory under "West Side Auto Parts" and at various places in the Chicago Classified Directory.

Plaintiffs' amended complaint alleges, among other things, that on January 14, 1966, the individual defendants and Il-

linois Bell, under color of law, either through a series of individual acts or collectively in conspiracy, illegally and arbitrarily terminated telephone service to the Mamolellas' store at 3001 South Kedzie Avenue. Further, it alleges that Illinois Bell, either individually or in conspiracy with the individual defendants, under color of law, illegally and arbitrarily refused to restore plaintiffs' telephone service to this store for a subsequent period of four months. This loss of telephone service is alleged to have resulted in a substantial decline in the Mamolellas' auto parts business, which, in turn, forced them to lay off or discharge several of their employees. On the basis of these allegations, the Mamolellas seek compensatory and punitive damages from Illinois Bell and the individual defendants for the loss of profits which they allegedly have incurred. Plaintiff Palma seeks compensatory and punitive damages for alleged lost wages.

In addition, the complaint alleges that defendants Powers, Healy and Tobin, acting under the direction of defendant McGann, committed the following acts: (1) without lawful authority entered the Mamolellas' store at 3001 South Kedzie, took complete physical possession of the entire premises and conducted an illegal search for a period of two and one-half hours; (2) illegally seized and removed the telephones therein; (3) arrested plaintiffs Palma and Frank Mamolella without probable cause or a warrant; (4) without probable cause charged plaintiffs Palma and Mamolella with having committed a felony; and (5) prepared police reports containing untrue and false statements relating to the arrests of these plaintiffs.

Both Illinois Bell and the individual defendants have moved for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure. In support of their motions, the defendants have tendered the transcript and records of a criminal proceeding brought against plaintiffs Palma and Frank Mamolella in the Circuit Court of Cook County, showing the conviction of Mamolella of the criminal offense of "gambling." This conviction was affirmed by the Appellate Court of Illinois for the First District.

Defendants contend that this conviction conclusively establishes, first, that the telephones in the premises at 3001 South Kedzie were used for an illegal purpose, i. e., gambling, and, second, that the search of plaintiffs' store, the seizure of their telephones and the arrests incidental thereto were valid acts of the police officers. They submit that under the doctrine of res judicata the plaintiffs are precluded from relitigating these issues. In response, the plaintiffs contend, *inter alia,* that the state court judgment was fraudulently obtained and that, therefore, they are entitled to an independent trial and determination by this Court of the merits of their claims.

Putting aside plaintiffs' objections to the motion for summary judgment for the moment, it should be noted that this Court heard preliminary testimony on the relevant issues in May, 1967, in conjunction with a motion by plaintiffs for a temporary injunction. The operative facts, as disclosed by this testimony and the affidavits, depositions and exhibits on file with the Court are essentially as follows.

On January 14, 1966, Officer Powers appeared before a Magistrate of the Circuit Court of Cook County, Illinois, and requested the issuance of a warrant to search the first floor of the West Side Auto Parts store at 3001 South Kedzie Avenue. At this hearing, Officer Powers subscribed and swore to a "Complaint for Search Warrant" setting forth certain grounds for the search of those premises. Upon examination of the complaint, a warrant was issued by the Magistrate authorizing the search of the premises in question and the seizure "of all implements, instruments, and apparatus kept, used or provided to be used in illegal gambling." At approxi-

mately two o'clock that afternoon, Officer Powers, accompanied by officers Healy and Tobin, entered the premises at 3001 South Kedzie. The three officers then conducted a search of the premises and the persons of Fred Palma and Frank Mamolella, both of whom were in the store when the officers arrived.

The testimony at the preliminary hearing as to what actually transpired during this search differs greatly. However, it is clear that before leaving the premises, the officers physically disconnected and removed all telephone instruments at that location. At the conclusion of the search, Palma and Frank Mamolella were taken into custody and transported to the headquarters of the Chicago Police Department at 11th and State Streets, where they were charged with the criminal offense of "Gambling" after which they were released on bond.

■ Palma and Frank Mamolella were subsequently tried on January 28, 1966, in the Circuit Court of Cook County. The transcript of this proceeding discloses that, initially, these plaintiffs had been charged with a violation of Section 28–1(a) (5) of the Illinois Criminal Code, which proscribes the recording and registering of bets. Ill.Rev. Stat., Ch. 38, § 28–1(a) (5) (1965). A conviction under this section may constitute a felony. See, Ill.Rev.Stat., Ch. 38, § 28–1(c) (1965). However, at the commencement of the trial, the prosecuting attorney sought leave to amend the complaint on its face by reducing the charge to a misdemeanor and charging the defendants with a violation of Section 28–1(a) (2), which proscribes the making of "a wager upon the result of any game, contest, or any political nomination, appointment or election." Ill. Rev.Stat., Ch. 38, § 28–1(a) (2) (1965). Palma's and Mamolella's counsel raised no objection to this amendment. The defendants then waived a jury and entered pleas of not guilty. An evidentiary hearing ensued. At the conclu-

sion of the evidence, the Court found defendant Mamolella guilty as charged and imposed a fifty dollar fine upon him. Defendant Palma was found not guilty and discharged.

Mamolella's conviction was subsequently affirmed by the Illinois Appellate Court for the First District. People v. Mamolella, 85 Ill.App.2d 240, 229 N.E.2d 320 (1st Dist. 1967). Following this decision, Mamolella petitioned the Supreme Court of Illinois for Leave to Appeal from the Appellate Court. This petition was denied on December 19, 1967, and the conviction is therefore final.

The operative facts involving Illinois Bell are also relatively clear. On the afternoon of the search of the plaintiffs' premises, Alfred A. Haven, a Supervising Special Agent in the Security Department of Illinois Bell, received a telephone call from Sergeant McGann, a Vice Control Unit desk sergeant in the Chicago Police Department to whom Gambling Unit officers reported results of raids. Sergeant McGann told Haven that a gambling raid had been conducted at 3001 South Kedzie and that the police had discovered that the telephones on the premises were used to receive racing information and to place and receive bets. He also advised Haven that the police officers had a warrant for the search, that two men had been arrested, and that the officers had confiscated and would remove the telephones at that address. Sergeant McGann then requested that the telephone company discontinue service to the premises at that location.

Following this conversation, Haven arranged for the immediate disconnection of the power for telephone service to the Mamolellas' store at 3001 South Kedzie. He also directed that there be no referral of calls placed to those premises. This action was taken pursuant to the request of Sergeant McGann and also in conjunction with the administration of Regulation 21 of Illinois Bell,

filed by it with the Illinois Commerce Commission. This regulation provides,

> USE OF SERVICE FOR UNLAWFUL PURPOSES—The service is furnished subject to the condition that it shall not be used for the purpose of making or accepting bets, furnishing information or for any other purpose in connection with any gambling scheme, business, or device, or for any similar unlawful purpose. Any subscriber whose service is to be discontinued or any applicant to whom service is to be denied under this regulation will be notified by the Telephone Company of his right to a hearing by the Illinois Commerce Commission to determine whether or not such service is being used or will be used in violation of this rule. Upon complaint to the Commission by any applicant or subscriber who is affected by the refusal or discontinuance of service in accordance with this rule, such service shall be provided, continued, or restored if the Commission shall determine that the service has not been used or is not intended to be used in violation of this rule.

This regulation is applicable to all general local exchange service and is inherent in the contract between Illinois Bell and its subscribers.

While Illinois Bell made no independent investigation of the alleged gambling at plaintiffs' store, this is not unusual. At the preliminary hearing, Haven testified that a substantial number of telephones, possibly as many as a thousand, are removed each year for alleged violations of the subscriber's contract by some form or another of illegal use, that although many of these phones are removed on the basis of Illinois Bell's own investigation, approximately two-thirds of the total are removed by police activity, that the conversation he had with Sergeant McGann was typical of conversations which he had had with McGann many times concerning the removal by the police of phones allegedly used for illegal purposes, and that it is the standard practice of the telephone company when requested by the Police Department, on notification that the police are going to remove a phone, to turn off the power supply to that line.

Haven's testimony is corroborated by the deposition of Glenn, the Chief Special Agent in the Security Department of Illinois Bell. Glenn testified that Illinois Bell had promulgated certain departmental instructions governing its own independent investigation and termination of illegally used telephones, but that there was no specific written practice in the security department for step-by-step termination of service in conjunction with police activities. He stated further, however, that it was customary to order the discontinuance or the completion of the discontinuance of telephone service without an independent investigation upon oral request by the police, when the police advised his department that they had removed a particular subscriber's telephone during a raid of his premises. After termination of service, he testified, the police followed up the oral request with a written report of the raid and a letter requesting the company not to reinstall service.

Illinois Bell received written reports of the raid of plaintiffs' store, the criminal charges against Palma and Mamolella, and the subsequent disposition of those charges from the Chicago Police Department on February 19, 1966. An accompanying letter formally requested that telephone service to plaintiffs' premises be cancelled.

Although several informal attempts were made by plaintiffs and representatives of plaintiffs to secure the restoration of telephone service by contacting Illinois Bell and the Chicago Police Department, no formal complaint was ever filed before the Illinois Commerce Commission on behalf of West Side Auto Parts. During the week following the raid, the Mamolellas contacted representatives of Illinois Bell on numerous occasions to obtain restoration of the

service to their store. On each occasion, they claimed that they had never used the telephone for gambling and that the police were either mistaken or lying. Each of these requests was refused by the representatives of Illinois Bell and plaintiffs were told to discuss the matter with the police. Requests by plaintiffs for an authorization for the restoration of service similarly were rejected by the Police Department. Although the plaintiffs were not advised either by Illinois Bell or the Police Department of their right to a hearing before the Illinois Commerce Commission, they retained the services of an attorney on or about January 20, 1966, and were informed by him that they could proceed before the Commission. Plaintiffs, however, were advised by their attorney that they should delay filing a complaint before the Commission until after disposition of the pending criminal charges.

In early February, 1966, the Mamolellas and their attorney again contacted various representatives of Illinois Bell about the restoration of service and advised them that West Side Auto Parts was sustaining damages and a loss of business as a result of the lack of telephone service to the store at 3001 South Kedzie. The uncontested affidavits of these representatives disclose that on each occasion plaintiffs were informed that the proper procedure was to file an application for restoration with the Illinois Commerce Commission. Shortly thereafter, prior to the filing of any application with the Commission, plaintiffs instituted this suit. On May 20, 1966, upon the suggestion of this Court and upon the agreement of plaintiffs' attorney that plaintiffs would proceed before the Commission, telephone service was restored to the store in question by Illinois Bell.

Essentially, the defendants contend that the telephones at plaintiffs' store were used for illegal gambling and, hence, the termination and refusal to restore such telephone service was reasonable. Plaintiffs deny that their telephones were used for gambling. Further, at the preliminary hearing, both Palma and Frank Mamolella contended that the police found no physical evidence of gambling activities during the search of the store and suggested that the alleged "betting calls" were fabricated by the police.

The defendants point out that, in any event, Frank Mamolella was found guilty of gambling in the prior criminal proceeding. They submit that the fact that the telephones of West Side Auto Parts were unlawfully used for gambling is conclusively established by this judgment and that plaintiffs are foreclosed from relitigating this issue of fact, since it is res judicata. Defendants also note that the search of the premises of the plaintiffs' store and the seizure of the telephones therein were conducted by the police pursuant to a search warrant issued by a Magistrate of the Circuit Court of Cook County and that the validity of this search and seizure was not challenged in the prior criminal proceedings. They urge that the plaintiffs are similarly foreclosed from litigating this issue in the instant case. In addition, they point out that the police officers testified at the hearing on the preliminary injunction before this Court that various documents which they identified as gambling paraphernalia had been found on the premises.

 Specifically, defendants rely on the doctrine of collateral estoppel (issue preclusion) and not upon res judicata (claim preclusion).[1]

---

1. The term "res judicata" is frequently used generically to cover the principles of merger, bar, collateral estoppel, and direct estoppel. See Lawlor v. National Screen Service Corp., 349 U.S. 322, 326 n. 6, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). In its development, however, this concept has been divided into two clearly recognized facets. One of these involves the preclusion of a claim or cause of action which has been litigated and decided in a prior suit. The other facet involves the preclusion of an issue litigated and determined in a previous suit. Id. at 326,

■ The concept of issue preclusion developed largely in the context of civil litigation.[2] It is designed, essentially, to prevent repetitious litigation of the same issue by the same parties. As it relates to civil actions, the concept of issue preclusion is in substance that any fact, question or matter in issue and directly adjudicated or necessarily involved in a determination of an action before a court of competent jurisdiction in which a judgment or decree is rendered on the merits, is conclusively settled by the judgment therein and cannot be relitigated in any future action between the parties or privies, either in the same court or a court of concurrent jurisdiction, while the judgment remains unreversed or unvacated by proper authority, regardless of whether the claim or cause of action, purpose or subject matter of the two suits is the same.[3]

■ While some of the policies underlying the application of the concept may be different, it is well established that the principles of issue preclusion apply in sequential criminal, as well as sequential civil litigation.[4] Although traditionally the courts held that a conviction is not admissible in a subsequent civil action to prove issues determined in the criminal prosecution,[5] this rule has been abandoned by a number of courts in recent years. The concept of issue preclusion has been applied on the basis of a prior criminal conviction in a substantial number of civil suits.[6] Since issue preclusion is applicable in both criminal and civil litigation, there would seem to be no viable reason to bar its application in a civil suit simply because the initial litigation was in a criminal court. The rationale underlying preclusion generally supports its application regardless of the type of litigation involved.[7]

■ Issue preclusion generally applies only to those matters actually raised and adjudicated in the antecedent suit. The classic statement of this rule is found

75 S.Ct. 865. These different facets of the principle of "res judicata" might properly be called "claim preclusion" and "issue preclusion" respectively. See Vestal, The Constitution and Preclusion Res Judicata, 62 Mich.L.Rev. 33, 34 (1963).

The instant suit involves only a question of "issue preclusion." There has been no previous adjudication of plaintiffs' claims or cause of action. Defendants assert only that the plaintiffs are foreclosed from relitigating certain issues.

2. See, generally, Polasky, Collateral Estoppel—Effects of Prior Litigation, 39 Iowa L.Rev. 217 (1954).

3. See, e. g., Heiser v. Woodruff, 327 U.S. 726, 733, 66 S.Ct. 853, 90 L.Ed. 970 (1946) ; Southern Pacific R.R. Co. v. United States, 168 U.S. 1, 48–49, 18 S.Ct. 18, 42 L.Ed. 355 (1897) ; Bartsch v. Washington Metropolitan Area Transit Comm'n, 357 F.2d 923, 924 (4th Cir. 1966) ; In re Constructors of Florida, Inc., 349 F.2d 595, 599–600 (5th Cir. 1965), cert. denied, 383 U.S. 912, 86 S.Ct. 886, 15 L.Ed.2d 667 (1966).

4. See, e. g., Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948) ; United States v. Oppenheimer, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916) ; Laughlin v. United States, 120 U.S.App.D.C. 93, 344 F.2d 187, 189–192 (1965) ; United States v. Kramer, 289 F.2d 909, 913–921 (2d Cir. 1961).

5. See, e. g., Brown v. Moyle, 133 Colo. 29, 209 P.2d 1105 (1955) ; Smith v. New Dixie Lines, Inc., 201 Va. 466, 111 S.E. 2d 434 (1959). See, also, 2 Freedman, Judgments, § 653 (5th ed. 1925) ; Wigmore, Evidence §§ 1346, 1671(a) (3d ed. 1940).

6. See, e.' g., Local 167 Int'l. Bhd. of Teamsters, Chauffeurs, Stablemen & Helpers of America v. United States, 291 U.S. 293, 298, 54 S.Ct. 396, 78 L.Ed. 804 (1934) ; United States v. Gramling, 180 F.2d 498 (5th Cir. 1950) ; Austin v. United States, 125 F.2d 816, 818–819 (7th Cir. 1942) ; O'Neill v. United States, 198 F.Supp. 367, 369–370 (E.D.N.Y.1961) ; Teitelbaum Furs, Inc. v. Dominion Ins. Co., 58 Cal.2d 601, 606–607, 25 Cal.Rptr. 559, 375 P. 2d 439, 441–442 (1962) ; Hurtt v. Stirone, 416 Pa. 493, 206 A.2d 624, 625–627 (Pa.1965). See, generally, Vestal & Coughenour, Preclusion/Res Judicata Variables: Criminal Prosecutions, 19 Vanderbilt L.Rev. 683, 704–716 (1966).

7. Vestal & Coughenour, supra, note 6, at 683–84.

in Cromwell v. County of Sac,[8] where the Supreme Court of the United States stated:

> [W]here the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been litigated and determined. Only upon such matter is the judgment conclusive in another action. 94 U.S. 351, 353, 24 L.Ed. 195 (1876).

The record of the proceedings of the Circuit Court of Cook County is clear and unequivocal as to the first issue which defendants assert plaintiffs are precluded from relitigating. It is apparent that the question of whether or not the telephones at West Side Auto Parts were used for gambling was necessarily both raised and adjudicated.

The prosecution offered only three items of evidence to prove that Mamolella was engaged in gambling. The first item consisted of scratch sheets found at various locations in his store. The second consisted of gambling slips found on his person. The third was the testimony of Officer Powers that on several occasions during the raid when he answered the telephones at the store, the callers attempted to place bets on horse races. In response to this evidence, Mamolella denied knowledge of calls placing bets and of ever accepting bets. He submitted that such calls were probably wrong numbers. In reaching its finding of guilty, the trial court explicitly found that the telephones at Mamolella's store were used for gambling.

On appeal, Mamolella urged that there was no evidence to support his conviction. Rejecting this contention, the Appellate Court noted the testimony of Officer Powers concerning the telephone conversations, as well as the physical evidence. People v. Mamolella, 85 Ill. App.2d 240, 242, 229 N.E.2d 320, 322 (1st Dist.1967).

■ The consideration of the use of the telephones would appear indispensable to these verdicts. The amended complaint charged Mamolella with a violation of Section 28–1(a) (2) of the Criminal Code of Illinois. This section provides "A person commits gambling when he: * * * (2) Makes a wager upon the result of any game, contest, or any political nomination, appointment or election; * * *." Ill.Rev.Stat., Ch. 38, § 28–1(a) (2) (1965). The phrase "makes a wager" connotes the general meaning "to cause" or "to form" a wager. Implicitly, therefore, this provision requires active participation in placing or receiving wagers. The only evidence introduced against Mamolella showing active participation was the testimony that bets were received on the telephones at Mamolella's store. Accordingly, the Illinois courts had necessarily to determine that the telephones at the store were being used to receive bets on horse races in order to find Mamolella guilty of the offense.

■ Since it is clear that the issue of the use of the telephones at plaintiffs' store was actually raised and adjudicated in the prior criminal proceeding and that the consideration of this issue was necessary to the finding of guilty therein, the doctrine of collateral estoppel or issue preclusion is applicable to the matter.

■ There remains the question of whether issue preclusion is also applicable to the issue of the validity of the search of plaintiffs' store and the seizure of the telephones in it. The legality of this search and seizure was not challenged in the prior criminal proceedings.

8. 94 U.S. 351, 24 L.Ed. 195 (1876).

Nevertheless, all the evidence adduced against Mamolella at that proceeding is attributable to the search, and this evidence was admissible only if it was legally obtained. Therefore, the judgment of the Circuit Court necessarily presupposes the validity of the search. In essence, then, the question posed by the defendants is the applicability of issue preclusion or collateral estoppel to an issue necessarily adjudicated but not actually contested in the prior litigation.

 As noted earlier, issue preclusion generally applies only to those matters actually raised and adjudicated in an antecedent suit.[9] Although the requirement that the matter be actually controverted in a prior proceeding has been frequently reiterated,[10] there are a number of well-considered cases which adopt the position that, in certain situations, preclusion can arise even though the issue was not contested in the first suit. For instance, it is widely accepted by the state courts that a default judgment is conclusive as to all issues necessarily litigated and determined therein and has exactly the same validity and force as any other judgment.[11] Similarly, it is widely accepted that a consent decree, under proper circumstances, is entitled to res judicata effect and precludes litigation of the claims or issues determined in the decree in subsequent actions between the parties.[12] A further example of this idea is found in the sphere of criminal law. It is generally established that "A plea of guilty is not a mere admission of guilt. It is in and of itself a conviction and as conclusive as the verdict of a jury." Woodring v. United States, 248 F.2d 166, 169 (8th Cir. 1957). In the face of a voluntary plea of guilty, it has been consistently held that a criminal defendant cannot subsequently attack his conviction on the ground that it was secured in violation of his constitutional rights.[13]

 These competing lines of authority demonstrate that the principles of preclusion or collateral estoppel are not inflexible. Certainly, it is inconsistent simply to say that issue preclusion is applicable to those matters necessary to the judgment where the defendant has defaulted and therefore contested none of the factual allegations or entered into a consent judgment or pleaded guilty to a criminal violation of the law, but that preclusion is not applicable to such matters where the defendant has contested some and not others in the previous proceeding. If any principle may be gleaned

---

9. See note 8, supra, and accompanying text.

10. See, e. g., Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 569, 71 S.Ct. 408, 95 L.Ed. 534 (1958); Tidewater Oil Co. v. Jackson, 320 F.2d 157, 161 (8th Cir.), cert. denied, 375 U.S. 942, 84 S.Ct. 347, 11 L.Ed.2d 273 (1963); Alexander v. Commissioner of Internal Revenue, 224 F.2d 788, 792–793 (5th Cir. 1955); United States v. Swift & Co., 189 F.Supp. 885, 903 (N.D.Ill.1960); aff'd, 367 U.S. 909, 81 S.Ct. 1918, 6 L.Ed.2d 1249 (1961). See, also, Restatement, Judgments § 68(2) (1942).

11. See, e. g., Harvey v. Griffiths, 133 Cal. App. 17, 22–23, 23 P.2d 532, 534 (3d Dist. 1933); Kirkham v. Harris, 285 Ill.App. 385, 2 N.E.2d 119 (4th Dist. 1936); Buck v. Mueller, 221 Or. 271, 274, 351 P.2d 61, 63–64 (1960); Messerlian v. Goodness, 75 R.I. 203, 65 A.2d 42 (1949).

12. See, e. g., Beloit Culligan Soft Water Service Inc. v. Culligan, Inc., 274 F.2d 29, 35 (7th Cir. 1959); International Bldg. Co. v. United States, 199 F.2d 12 (8th Cir. 1952); Purvis v. Great Falls Building & Const. Trades Council, 266 F.Supp. 661, 663 (D.Mont.1967). See Annot., 2 A.L.R.2d 514 (1948).

13. See, e. g., United States v. Doyle, 348 F.2d 715 (2d Cir. 1965); Hall v. United States, 259 F.2d 430 (8th Cir. 1958), cert. denied, 359 U.S. 947, 79 S.Ct. 728, 3 L.Ed.2d 680 (1959); United States v. Shelton, 249 F.2d 871 (7th Cir. 1958); United States v. McGee, 144 F.Supp. 466 (N.D.Ind.1956).

In Bradford v. Lefkowitz, 240 F.Supp. 969 (S.D.N.Y.1965), it was held that a plea of guilty is an effective bar to a subsequent civil action under the Civil Rights Act, 42 U.S.C. § 1983, based on a claim of false imprisonment or malicious prosecution. Id. at 974–976.

from these divergent lines of authority, it is that preclusion is appropriate in those situations where there is reason to believe that the failure to litigate the matter in fact was a recognition of the validity of the opposing claim.[14]

The principle inquiry then in a situation such as the present one, where it is claimed that preclusion extends to an uncontested issue, would seem to be whether it is reasonable to assume that the party's action in the first suit was an admission of the uncontested issue. This, of course, would depend upon the circumstances surrounding the prior action. Ultimately, it would seem to depend upon such objective factors as: (1) the importance of the matter to the party; (2) the cost of the litigation; or (3) the ease with which a defense could have been made on the uncontested point.[15] The importance of these factors was recognized by the Supreme Court in its opinion in Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195 (1876), where it said:

> Various considerations, other than the actual merits, may govern a party in bringing forward grounds of recovery or defense in one action, which may not exist in another action upon a different demand, such as the smallness of the amount or the value of the property in controversy, the difficulty of obtaining the necessary evidence, the expense of the litigation, and his own situation at the time. Id. at 356.

Preclusion should not be applicable where the defendant's trial technique is dictated by such expediency and convenience, rather than by the merits of his position. A litigant should be foreclosed from actually litigating a matter, only if his action in the prior suit can be considered a waiver of his right to contest the issue.

Where there has been a failure to defend on a point in a prior action, however, it is reasonable to assume that the party admits the truthfulness of the matter urged. This would seem particularly true where the party has gone to the time and expense of defending on the other points in issue. Further, considerations of public policy become involved where a party later seeks to litigate a point which he had full opportunity to litigate previously. The efficient operation of our legal system normally requires that fundamentally related issues be adjudicated in a single proceeding in one court; that piecemeal, diffuse, and unnecessarily prolonged resolution of controversies between parties be avoided. Consequently, a litigant who has once foregone his opportunity to contest a matter which was necessarily decided in a previous proceeding should, at least, have the burden of explaining his failure to controvert the matter in the earlier suit or his desire to litigate the matter in a second action.[16]

In the instant suit, plaintiffs have presented, at best, only a superficial explanation for the failure to attack the legality of the search and seizure in question in the prior criminal proceedings. They submit that little time or consideration was given by any of them to preparation for that proceeding because they were primarily concerned with obtaining the restoration of their telephone service and their efforts were directed almost entirely towards that end. The circumstances surrounding the plaintiffs' dilemma, however, do not corroborate this explanation. From their inquiries, the plaintiffs knew that both the Police Department and the representatives of Illinois Bell were intransigent in their refusal to restore telephone service because of the pending "gambling" charges. Further, plaintiffs were advised by their counsel to delay

---

14. See, generally, Vestal, Preclusion/Res Judicata Variables: Nature of the Controversy, 1965 Wash.U.L.Q. 158, 164–70 (1965).

15. Vestal, supra, note 14, at 167.

16. Id. at 167.

filing a complaint for restoration of service before the Illinois Commerce Commission until after the disposition of these charges. Plaintiffs were obviously quite aware of the importance of the criminal proceedings or the possible consequences which a conviction might have on the restoration of their phones.

The validity of the search was likewise of vital importance to Mamolella in the prior criminal proceedings. The lawfulness of the seizure of the telephones, as well as the admissibility of virtually all the prosecution's evidence, was predicated on this search. Mamolella was represented by counsel and the point could have easily been raised by a motion to suppress. Under these circumstances, his failure to contest the issue can reasonably be regarded as an admission of the lawfulness of the search. It appears, therefore, that issue preclusion is also applicable to this matter.

Notwithstanding the apparent applicability of issue preclusion to the matters discussed above, plaintiffs contend that they are entitled to a full evidentiary hearing on their claims. In support of this contention, they submit that this Court has an independent duty to determine the possible violations of their constitutional rights and that it is not bound by the prior determination by the Illinois courts of any issue relevant to their claims.

Absent some overriding principle of public policy, there is no reason why a litigant, once he has been given a full and fair opportunity to present his case and the contested matter has been decided against him, should be allowed to relitigate the matter in another court.[17] An encore in a second court is needless where, as here, the litigant is afforded an avenue for relief from an erroneous or unjust decision in the first court by appeal or some other appropriate means of reexamination. A second contest, therefore, would result only in wasted usage of the judicial machinery. Moreover, subsequent litigation of the issue would pose the possibility of divergent judgments. Such judgments would lead only to further confusion; the second judgment could not rightfully be considered any more conclusive than the first. Relative certainty would be replaced by chaos.

The underlying interest of society in the finality of judgments, therefore, would seem to support the preclusion of previously litigated issues regardless of the context of the subsequent litigation.[18] The plaintiffs nevertheless suggest that the importance attaching to constitutional rights requires the fullest opportunity for a plenary federal hearing in civil rights actions and that these considerations dictate an exception to traditional notions of finality in such actions. Such an exception, of course, would be similar to that applied in habeas corpus proceedings.[19]

Such an exception is unwarranted in civil rights actions seeking money damages for alleged deprivation of constitutional rights. The opportunity for a federal hearing in a habeas corpus proceeding is not supported merely by the importance of vindication of constitutional rights, but by the larger interest of the right to personal liberty.[20] This is illustrated by the unavailability of this remedy in those situations in which a petitioner has been discharged

---

17. See, generally, Vestal, The Rationale of Preclusion, 9 St. Louis U.L.J. 29, 31–33 (1964).

18. See, e. g., Heiser v. Woodruff, 327 U.S. 726, 733, 66 S.Ct. 853, 90 L.Ed. 970 (1946); Baldwin v. Iowa State Traveling Men's Ass'n., 283 U.S. 522, 525–526, 51 S.Ct. 517, 75 L.Ed. 1244 (1931).

19. See Fay v. Noia, 372 U.S. 391, 423, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

20. Id. at 422–425, 83 S.Ct. 822.

from incarceration.[21] Such a significant interest is normally absent in civil rights suits.

 Moreover, a plenary federal hearing would not seem justified simply because the initial adjudication was in a state court. The state courts are not incompetent bodies for the adjudication of civil or constitutional rights. The state courts have the responsibility, equally with the federal courts, "to guard, enforce, and protect every right granted or secured by the constitution of the United States * * *." Robb v. Connolly, 111 U.S. 624, 637, 4 S.Ct. 544, 551, 28 L.Ed. 542 (1884). It certainly cannot be assumed in a subsequent civil rights action that the state courts failed to observe the litigant's constitutional rights in the previous criminal proceeding.

Plaintiffs also contend that issue preclusion is inapplicable because the judgment of the Circuit Court of Cook County is void. In support of this contention they assert: (1) that Mamolella's conviction was secured by the suppression of substantial and controlling evidence which was favorable to Mamolella's defense; (2) that the conviction was predicated on false police reports; (3) that the conviction was secured as part of a prearranged conspiracy; (4) that the evidence introduced against Mamolella was insufficient to support a finding of guilty; and (5) that the statute under which Mamolella was convicted is unconstitutional.

 It is a well established principle of law that a judgment is subject to collateral attack only on jurisdictional grounds. This is true of both civil[22] and criminal judgments.[23] A judgment entered by a court with jurisdiction of the subject matter and the parties is considered valid, even though erroneous or obtained by fraud. Until set aside in the court which rendered it or by a reviewing court exercising appellate jurisdiction, it is binding on the parties and their privies in all of the nation's tribunals, federal or state.[24]

Plaintiffs point out, however, that Mamolella's conviction involved only a misdemeanor and that the trial court imposed only a fifty dollar fine upon him. They contend that such a relatively minor criminal conviction cannot be give preclusive effect in this proceeding.

While it is true that a litigant's defense may be dictated by matters of convenience more than guilt in a minor criminal matter,[25] drawing a distinction between major and minor criminal matters misses the point. The critical consideration is whether the litigant had an incentive and an opportunity to litigate the issue fully in the previous proceeding.[26]

 Mamolella was originally charged with a felony, under which he could have been sentenced from one to five years in prison. When he first appeared in court, he had every motive to make as vigorous and effective a defense as possible. Although the charge was subsequently reduced to a misdemeanor, he still chose to defend. At the trial, he testified in his own behalf and the transcript of the proceedings

---

21. See Parker v. Ellis, 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963 (1960).

22. See e. g., Simmons v. Saul, 138 U.S. 439, 458–459, 11 S.Ct. 369, 34 L.Ed. 1054 (1891); Midessa Television Co. v. Motion Pictures for Television, 290 F.2d 203 (5th Cir.), cert. denied, 368 U.S. 827, 82 S.Ct. 47, 7 L.Ed.2d 30 (1961).

23. See e. g., Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455 (1939); In re Tinkoff, 95 F.2d 651, 652 (7th Cir. 1938).

24. See 1B Moore, Federal Practice, ¶ 0.-405 [4.–1], (2d ed. 1965).

25. See Hurtt v. Stirone, 416 Pa. 493, 206 A.2d 624, 627 (Pa.1965).

26. See Teitelbaum Furs, Inc. v. Dominion Ins. Co., 58 Cal.2d 601, 606–607, 25 Cal. Rptr. 559, 375 P.2d 439, 441–442 (1962); Hurtt v. Stirone, 416 Pa. 493, 206 A.2d 624, 627 (Pa.1965). See, also, Vestal & Coughenour, supra note 6, at 688, 718.

discloses that neither the prosecutor nor the trial judge restricted his counsel in the cross-examination of the prosecution's witness. In short, the transcript discloses that he was afforded a full opportunity to litigate the issue of his guilt with all the safeguards afforded the criminal defendant. Since his conviction, he promulgated appeals to both the Appellate Court and the Supreme Court of Illinois. On the record, it cannot be urged that Mamolella failed to take full advantage of his day in court or that the matter was insignificant to him. Under these circumstances, it would seem entirely proper that the prior criminal proceeding be accorded conclusive effect herein.

Plaintiffs' complaint is not a model of clarity, but, basically, it can be considered to join three separate "categories" of claims. First, there are a number of claims asserted by the plaintiffs individually or together against the police officers and Illinois Bell, which arise out of the termination of plaintiffs' telephone service. Second, there are the individual claims of plaintiff Frank Mamolella against the police officers which relate to his search, arrest, and prosecution. Third, joined with the above claims is a claim by plaintiff Palma against the police relating to his search, arrest and prosecution. All the claims are predicated upon sections 1983 and 1985 of the Civil Rights Act, 42 U.S.C. §§ 1983, 1985.

▆ ▆ Section 1983 provides a broad civil remedy for the deprivation of constitutional rights under color of state law. See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Section 1985(3) creates a cause of action for a conspiracy under color of state law which deprives the plaintiff of equal protection of the laws or equal privileges and immunities under the law. See Hoff-

man v. Halden, 268 F.2d 280, 292 (9th Cir. 1959).

▆ We turn first to the claims arising from the termination of the plaintiffs' telephone service. Essentially, the complaint alleges that the individual defendants and Illinois Bell conspired to illegally terminate plaintiffs' service and that the actions of defendants deprived plaintiffs of rights guaranteed by the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States. The foregoing undisputed and established facts, however, do not establish in law or in fact a conspiracy between Illinois Bell and the officers. Nor do these facts disclose that the termination of plaintiffs' service was in violation of any of plaintiffs' constitutional rights.

▆ Plaintiffs' telephones were removed pursuant to a search warrant authorizing the search of their premises and the seizure of "all instruments, implements, and apparatus kept, used, or provided to be used in illegal gambling." The validity of the search is established and the search disclosed that plaintiffs' telephones were part of the apparatus used for illegal gambling. Under the warrant, the police were entitled to remove and seize the telephones the same as any other physical object which they had reason to believe was used for illegal gambling. The seizure of plaintiffs' telephones did not violate the Fourth or Fourteenth Amendments to the Constitution.

▆ Similarly, the removal and seizure of the phones did not violate any of plaintiffs' rights under the Fifth and Fourteenth Amendments of the Constitution. It is well established that the public has no unqualified constitutional right to receive telephone service. Such service may be conditioned upon a variety of just and reasonable regulations.[27]

---

27. See, e.g., Lewis v. Potomac Electric Power Co., 62 U.S.App.D.C. 63, 64 F.2d 701 (1933); Katz v. American Teleph. & Teleg. Co., 86 P.U.R.N.S. 65, 74-75 (1950); Holt v. New England Teleph. & Teleg. Co., 11 P.U.R.3d 502, 505 (1955).

Certainly, the state has a valid interest in preventing the use of telephone service for illegal purposes. Under the circumstances of this case, the officers' removal of plaintiffs' telephones can only be considered a reasonable exercise of the state's police power.

 It is clear that Illinois Bell had nothing to do with the initial removal of the telephone instruments. The decision to remove these instruments was made by the police officers and the only participation of Illinois Bell was its compliance with their request that it shut off the power to plaintiffs' telephone lines. Illinois Bell's liability, if any, must be predicated upon its subsequent refusal to restore plaintiffs' service.

 It is the general rule that a telephone company may refuse, and cannot be compelled, to furnish service which will be used, or which the telephone company has reasonable cause to believe will be used, in furtherance of illegal enterprises.[28] In other words, it is not necessary that the telephone company show an explicit violation of the law in order to justify its refusal to furnish service; the law allows the company to terminate service if it can prove that it had a reasonable basis to believe that the service was being used to aid in an illegal purpose.[29] The utility, of course, is free to consult with police and other law enforcement agencies and oral or written information which has been received from such agencies may properly serve as a basis for its actions.[30]

 It is undisputed that Illinois Bell received an oral report from the police concerning the raid of plaintiffs'

premises. It was informed that the raid was conducted pursuant to a search warrant, that two men had been arrested and charged with the offense of gambling, that while on the premises the police had discovered that the telephones were used to receive racing information and to place and receive bets, and that they had or would remove the telephone instruments. Subsequently, it received written reports confirming the details of the raid and the disposition of the charges brought against Mamolella and Palma. Under these circumstances, it is obvious that Illinois Bell acted reasonably in refusing to restore telephone service to West Side Auto Parts.

Plaintiffs point out, however, that their service was terminated without prior notice or a hearing. They contend that Illinois Bell's actions denied them due process and equal protection of the law. As noted above, the Chicago Police, not Illinois Bell, were responsible for the initial termination of the telephone service. If Illinois Bell is to share the responsibility, it is on account of its subsequent refusal to restore the service.

 Nevertheless, the simple answer to plaintiffs' contention is that the mandates of due process are met if the subscriber has recourse to a Court or Commission in which he may question the propriety of the termination or refusal to restore telephone service. Where only property rights are concerned, it is sufficient that there is at some stage an opportunity for a hearing and a judicial determination.[31]

 The plaintiffs had an opportunity to challenge the propriety of the

28. See, e.g., Delaware Sports Service v. Diamond State Telephone, 241 F.Supp. 847, 852 (D.Del.1965); Tracy v. Southern Bell Teleph. & Teleg. Co., 37 F. Supp. 829, 830 (S.D.Fla.1940); Hamilton v. Western Union Teleg. Co., 34 F. Supp. 928 (E.D. Ohio, 1940).

29. Delaware Sports Service v. Diamond State Telephone, 241 F.Supp. 847, 852 (D.Del.1965).

30. See Rubin v. Pennsylvania Public Utility Comm'n., 197 Pa.Super. 157, 177 A.2d 128 (1962).

31. See Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 599, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); Bowles v. Willingham, 321 U.S. 503, 520, 64 S.Ct. 641, 88 L.Ed. 892 (1944). See, also, Katz v. American Teleph. & Teleg. Co., 86 P.U. R.N.S. 65, 75 (1950).

search of their store and the seizure of the telephones by the police at the criminal trial. Further, they had a right to a hearing before the Illinois Commerce Commission concerning the propriety of Illinois Bell's refusal to restore service. They were specifically advised of this right by their own attorney prior to the criminal trial. Similarly, on several occasions after the disposition of the criminal charges, plaintiffs were informed by representatives of Illinois Bell that they could file a complaint before the Commission. Yet throughout the period of the alleged deprivation of their right to service, no formal complaint was filed by plaintiffs with the Commerce Commission. Under these circumstances, plaintiffs cannot now claim that they have been denied due process; they have deliberately ignored the forum provided for their grievance.

■ Likewise, they cannot claim that they have been denied equal protection of the law. There is no evidence that plaintiffs received treatment any different from that accorded to other telephone subscribers under similar conditions. Indeed, the testimony of Alfred Haven at the preliminary hearing in this cause and the deposition of Todd Glenn disclose that the termination of plaintiffs' service was consistent with the customary and usual practice of the telephone company in similar situations.

■ Finally, plaintiffs submit that the actions of the defendants violated their rights under the First Amendment. This contention is apparently predicated on the assumption that telephone service in and of itself comes within the protection of the First Amendment. This assumption, however, would seem erroneous. Telephone service is not speech itself, but merely an electrical and mechanical device which is capable of extending the distance of voice communication. While deprivation of the means to communicate may constitute an effective suppression of First Amendment rights, plaintiffs have not cited, nor has this Court found, any authority for the proposition that freedom of expression compels provision of such electrical and mechanical extensions of communications.

■ It must be remembered, moreover, that freedom of expression is not an absolute. In the instant case, the speech that precipitated the termination of plaintiffs' service was telephone conversations in the furtherance of a gambling operation. The First Amendment does not protect gambling conversations and, certainly, it cannot be expanded to apply to the electronic extensions of those communications. Since there is no way, as a matter of practical and constitutionally legitimate regulation, to discriminate between telephone gambling conversations and lawful telephone business conversations, telephone service by its very nature becomes indivisible. In light of this, it cannot be said that the termination of telephone service due to the illegal use of the telephones violates the provisions of the First Amendment.

■ Next we turn to the individual claims of Frank Mamolella. These claims relate solely to the actions of the police officers. The complaint sets forth claims against the officers for essentially the "false arrest" and "malicious prosecution" of the plaintiff and the "unlawful search" of his person and the premises of his store. It also alleges that these actions were committed by the defendants pursuant to a prearranged conspiracy to illegally arrest plaintiff Frank Mamolella. While any of these allegations might properly be considered to state a cause of action under either sections 1983 or 1985, in the present context, they can only be regarded as spurious. Plaintiff Frank Mamolella was actually convicted of a criminal offense arising out of his arrest. This conviction, itself, conclusively establishes that there was probable cause for his arrest and prosecution. He is precluded by the conviction from relitigating this issue, the same as any other issue which was necessarily determined in the criminal proceeding. It is clear, therefore, that he cannot establish an essential element of his claims of false arrest, malicious

prosecution, or conspiracy, and that these claims are unfounded.

As noted above, the validity of the search in question must also be deemed established by his lawful arrest and subsequent conviction. Accordingly, his claim of an unlawful search is also precluded.

■ There remains Palma's individual claim against the police officers. Basically, this involves an action for deprivation of his right not to be subject to an unreasonable search and illegal arrest. There is no question that he has presented a claim upon which relief might be granted under section 1983 of the Civil Rights Act. See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961).

■ The prior criminal adjudication, in which Palma was found not guilty of the gambling charge that arose from his arrest, provides no reliable basis for judging this claim. While it might be inferred from Palma's acquittal that there was no probable cause for his arrest, one could also interpret his acquittal to simply mean that the state failed to prove his guilt beyond a reasonable doubt. The courts have almost unanimously held that there is no necessary preclusive effect to be given an acquittal in a subsequent civil action.[32] Preclusion is clearly inappropriate in this instance.

■ Similarly, the undisputed facts presently before the Court are insufficient to disclose whether cause existed for the arrest of Palma. Factual issues still exist as to this matter and the plaintiff is entitled to the benefit of any doubt. See Moutoux v. Gulling Auto Electric, Inc., 295 F.2d 573, 576 (7th Cir. 1961). Summary judgment, therefore, cannot properly be entered on this claim.

■ To summarize the conclusions reached herein, we hold that since the state court criminal proceedings necessarily determine that the phones in question were being used for an illegal purpose, no cause of action under the Civil Rights Act may be maintained by any of the plaintiffs based on their removal. Further, we hold that Frank Mamolella's conviction precludes him from maintaining any action under the Act based solely on the fact that he was arrested.

■ We do not hold that a conviction bars any and all civil rights actions in connection therewith. If the contention is, for example, that excessive force was used in his arrest or he was illegally detained, etc., the person convicted may nevertheless seek redress for any such deprivation. No such claim is here made. The final state court adjudication of guilt does, however, preclude relitigation of that question and any claim of deprivation of civil rights predicated solely on the alleged falsity of the arrest or impropriety of the conviction.

Finally, we conclude that Palma has alleged a cause of action which is not precluded by any prior judicial determination. Whether or not the police conduct under all the circumstances constituted a deprivation of his civil rights remains to be determined in the light of the evidence adduced at trial.

For the foregoing reasons, it is clear that all of the claims against the defendants are unfounded, except possibly the claim of Palma against the individual defendants for unlawful arrest. The motion of defendant Illinois Bell for summary judgment must be granted. The motion of defendants, Powers, Healy, McGann, and Tobin for summary judgment must be granted in part and denied in part. An appropriate order will be entered.

32. See, e.g., Helvering v. Mitchell, 303 U.S. 391, 397–398, 58 S.Ct. 630, 82 L. Ed. 917 (1938); Hodoh v. United States, 153 F.Supp. 822 (N.D. Ohio, 1957); United States v. Burns, 103 F.Supp. 690 (D.Md.), aff'd, 200 F.2d 106 (4th Cir. 1952). See, generally, Vestal & Coughenour, supra note 6, at 701–704.