539 So.2d 499 (1989)
Douglas Bernard VICKERY, Appellant,
v.
STATE of Florida, Appellee.
Joseph NUNNARI, Appellant,
v.
STATE of Florida, Appellee.
Nos. 87-1762, 87-1972.
District Court of Appeal of Florida, First District.
February 15, 1989.
Rehearing Denied March 29, 1989.
Ronald W. Johnson of Kinsey, Troxel, Johnson & Walborsky, P.A., Pensacola, for appellant/Vickery.
Henry R. Barksdale, Milton, for appellant/Nunnari.
Robert A. Butterworth, Atty. Gen., Gary L. Printy, and Helen P. Nelson, Assts. to the Atty. Gen., Tallahassee, for appellee.
ERVIN, Judge.
These two appeals challenge the constitutionality of the Florida RICO (Racketeer Influenced and Corrupt Organization) Act.[1] Procedurally, the cases arise from separate convictions; however, identical issues are presented by the appeals and we have therefore consolidated the two cases for the purpose of this opinion. The constitutionality of Florida's RICO Act has been challenged numerous times in the past  although not on the particular grounds now raised  and, while we concede that the facts now before us are unique, we find no constitutional violations insofar as the Act *500 applies to the appellants herein. We therefore affirm.
Appellants, Douglas Bernard Vickery and Joseph Nunnari, were involved in a football-betting operation, and were subsequently charged with racketeering in violation of Section 895.03(2), Florida Statutes,[2] a first degree felony. The RICO charges were based upon predicate acts consisting of second degree gambling misdemeanors, in violation of section 849.14,[3] Vickery and Nunnari having committed 18 and 29 such acts, respectively. The two appellants entered nolo contendere pleas, reserving their right to appeal the constitutionality of the racketeering statute. Each received sentences of ten years' probation, with the condition that one year be served in county jail.
The first constitutional challenge raised is that the Act violates the due process and equal protection clauses of the United States and State of Florida Constitutions, by the legislature impermissibly delegating basic policy decisions, absent ascertainable standards, to the prosecutor, giving him the unbridled discretion to pursue either a misdemeanor conviction under section 849.14 for each separate gambling incident, or a felony conviction under section 895.03 for the entire gambling episode. A comparable argument was raised in State v. Cogswell, 521 So.2d 1081 (Fla. 1988), in which the defendant contended that section 849.25[4] (bookmaking) was unconstitutional as violative of the due process and equal protection clauses, because the statute authorized the prosecution of bookmaking as a felony, which same conduct could be treated as a gambling misdemeanor under section 849.14. Our supreme court found no constitutional violation in the discretion so delegated to the prosecutor and affirmed the conviction. We consider that Cogswell is dispositive of the due process and equal protection challenges *501 raised by appellants herein, and, based upon Cogswell, we likewise find no such violations in the Act as applied in the instant cases.
Appellants also contend that the RICO Act is unconstitutional because it imposes cruel and unusual punishment in violation of the eighth amendment. Although appellants do not challenge a 30-year potential penalty as cruel and unusual punishment for racketeering, if imposed for convictions based upon felony predicate offenses, they argue that a potential 30-year sentence for their racketeering convictions, based solely on misdemeanor predicate acts, is cruel and unusual punishment. By applying an enhancement theory, appellants assert that the Act is unconstitutional because it raises the level of punishment for conduct involving the commission of two or more second degree misdemeanors to that imposed for the commission of a first degree felony.[5]
In determining whether a sentence violates the cruel and unusual clause of the eighth amendment, the Supreme Court in Solem v. Helm, 463 U.S. 277, 292, 103 S.Ct. 3001, 3011, 77 L.Ed.2d 637, 650 (1983), applied the following three-part test: (1) a court should consider the gravity of the offense and the harshness of the penalty imposed; (2) it should compare the sentence imposed to sentences imposed on other criminals in the same jurisdiction; and (3) it should compare the sentence imposed with the sentence imposed for commission of the same crime in other jurisdictions.
If one were to adopt the premise advocated by appellants that RICO is merely an enhancement statute, then one could reasonably conclude that a potential 30-year sentence for the commission of two or more second degree gambling misdemeanors, each carrying a maximum incarcerative sentence of 60 days, is cruel and unusual punishment. Considering first the second criterion of the Solem three-part test  the sentences that could be imposed for other crimes in the same jurisdiction  we find, as examples, the following types of conduct punishable as first degree felonies in Florida during 1985:

 Specified murder offenses 782.04(1)-(2)
 Specified sexual battery 794.011(4)
 offenses and 794.041
 Specified arson offenses 806.01(1)
 Robbery with a weapon 812.13(2)(a)-(b)
 Drug trafficking 893.135

Obviously, conduct involving murder, arson or armed robbery would ordinarily be considered by society as far more reprehensible and therefore deserving of greater punishment than conduct involving football betting  even if a defendant had committed 18 or 29 such offenses during a five-year period. Moreover, if the appellants had been charged as habitual misdemeanants for committing two or more second degree misdemeanors within a two-year period, the greatest enhanced sentence they could receive for such conduct is a term of imprisonment not exceeding one year. §§ 775.084(1)(b)(2), (4)(b)(2), Fla. Stat. (1985). Indeed, before one may receive an enhanced sentence of 30 years as a habitual felony offender, he or she would have to be charged with a felony of the second degree, carrying a maximum term of 15 years. See §§ 775.084(1)(a), (4)(a)(2), 775.082(3)(c), Fla. Stat. (1985). Therefore, if we were to accept appellants' argument that the punishment for a RICO violation is nothing more than an enhanced sentence for misdemeanor offenses  as is a sentence imposed on habitual offender  we could agree that the RICO penalty violates the second criterion listed in Solem.
Turning to the third factor enumerated in Solem  an examination of the sentences imposed for the commission of the same crime in other jurisdictions  we have been unable to find any exact parallel to Florida's RICO Act. We note, however, that in the federal sector, a RICO violation is punishable by imprisonment not exceeding 20 years and/or fine of up to $25,000. 18 U.S.C.A. § 1962 (West 1984). Nevada punishes RICO violations by fine of up to $25,000 and/or imprisonment of between 5-20 years. Nev.Rev.Stat. § 207.400 (1987). Connecticut penalizes such conduct *502 by imprisonment from 1-20 years and/or fine not exceeding $25,000. Conn. Gen. Stat. § 53-397 (1987). Illinois punishes narcotics racketeering as a Class I felony, which is subject to a fine of up to $250,000. Ill. Ann. Stat. ch. 56 1/2, para. 1655 (Smith-Hurd Supp. 1988). Louisiana punishes drug racketeering with a fine of not more than $1,000,000, or imprisonment at hard labor for not more than 50 years, or both. La. Rev. Stat. Ann. § 15:1354 (West Supp. 1988). It is true that we have found no statutes in other jurisdictions in which an ongoing pattern of conduct involving football betting, each act being a second degree misdemeanor punishable by imprisonment not exceeding 60 days, has been converted into a RICO violation carrying a maximum punishment of 30 years. However, it does not appear that the penalty Florida generally imposes for RICO violations varies greatly from the penalty imposed for RICO violations in other jurisdictions.
It is the uniqueness of the conduct proscribed by Florida's RICO Act which makes a Solem proportionality analysis difficult  if not impossible  to apply. This conclusion becomes particularly apparent when we undertake a consideration of the first of the Solem criteria: the gravity of the offense and the harshness of the penalty. The penalty prescribed for a RICO violation cannot be said to be simply an enhanced sentence for the underlying predicate offenses  unlike the penalty imposed on habitual offenders. Appellants were not sentenced merely for misdemeanor gambling. Rather, they were sentenced for their participation in an ongoing criminal enterprise  racketeering, which is a distinct and separate crime, not merely an enhancement sentence for repeated misdemeanor offenses.
Thus, a RICO violation generally involves two separate offenses: the first, the defendant's commission of the predicate offenses during the applicable period of time; and the second, the defendant's participation in a pattern of criminal activity. This distinction between the predicate acts and the racketeering offense has been discussed in several cases. In Carroll v. State, 459 So.2d 368 (Fla. 5th DCA 1984), review denied, 464 So.2d 554 (1985), the defendant was convicted of a RICO violation and six counts of dealing with the sale and delivery of controlled substances. In rejecting Carroll's double jeopardy objection, the court stated:
In adopting RICO in 1977, the legislature stated its intent to "resist and eliminate" infiltration of organized crime into this state and determined "it is necessary to provide new criminal ... remedies" to assist in the battle. See Chapter 77-334, Laws of Florida. By establishing the RICO Act, the legislature clearly intended that those persons who engage in a pattern of criminal activity be punished more severely than those convicted only of one of the predicate offenses.
Carroll, 459 So.2d at 369-70 (emphasis in original). Similarly, in Rogers v. State, 487 So.2d 57 (Fla. 3d DCA 1986), the court distinguished between the predicate offenses and the RICO violation. There the defendant was convicted under RICO for crimes in violation of the federal mail fraud statute. Rogers argued that his conviction must be reversed because prosecution of mail fraud was preempted by the federal government. The court disagreed, stating that the Florida RICO Act forbids racketeering, not the federal offense of mail fraud per se. Racketeering is the crime. RICO only uses the federal offense to establish the completed state charge. Rogers, 487 So.2d at 58.
This distinction was most recently discussed in Shaktman v. State, 529 So.2d 711 (Fla. 3d DCA 1988), where two defendants were charged with both RICO violations as well as felony bookmaking under section 849.25. As in Cogswell, the defendants in Shaktman also challenged the constitutionality of section 849.25. The Third District, in upholding the bookmaking statute, observed:
Even if the appellants had prevailed in their constitutional challenge to section 849.25, Shaktman and Mart would not be entitled to reversal of their judgments and sentences. The acts that trigger RICO may consist of felonies or misdemeanors or any combination thereof ... It is the "[p]attern of racketeering activity," that is, "at least two incidents of racketeering conduct," which is the gravamen *503 of a RICO offense. (Citation omitted.) The crime to which Mart and Shaktman pled nolo contendere was racketeering. The section 849.25 violations referred to in the informations merely serve to make up the complete charge.
Shaktman, 529 So.2d at 723. This rationale has similarly been adopted in other jurisdictions. See United States v. Elliott, 571 F.2d 880 (5th Cir.), cert. denied, Hawkins v. United States, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978); United States v. Field, 432 F. Supp. 55 (S.D.N.Y. 1977), affirmed, 578 F.2d 1371 (2d Cir.), cert. dismissed, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978); and State v. Johnson, 105 N.M. 63, 728 P.2d 473 (N.M.Ct. App.), cert. denied, 104 N.M. 702, 726 P.2d 856 (1986), cert. denied, 481 U.S. 1051, 107 S.Ct. 2185, 95 L.Ed.2d 841 (1987).
We conclude that the enhancement theory advocated by the appellants herein is inapplicable to Florida's RICO Act; therefore, no proportionality problem arises under Solem. Thus, we reject appellants' eighth amendment challenge.
AFFIRMED.
WENTWORTH and ZEHMER, JJ., concur.
NOTES
[1] Sections 895.01-895.06, Florida Statutes (1985).
[2] Section 895.03(2) provides:

It is unlawful for any person, through a pattern of racketeering activity or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property.
Section 895.02(1)(a)(24) provides:
(1) "Racketeering activity" means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit:
(a) Any crime which is chargeable by indictment or information under the following provisions of the Florida Statutes:
* * * * * *
(24) Section 849.09, s. 849.14, s. 849.15, s. 849.23, s. 849.24, or s. 849.25, relating to gambling.
(Emphasis added.)
Section 895.02(4) defines pattern of racketeering activity as:
engaging in at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurred after the effective date of this act and that the last of such incidents occurred within 5 years after a prior incident of racketeering conduct.
[3] Section 849.14, Florida Statutes (1985), provides:

849.14 Unlawful to bet on result of trial or contest of skill, etc.  Whoever stakes, bets or wagers any money or other thing of value upon the result of any trial or contest of skill, speed or power or endurance of man or beast, or whoever receives in any manner whatsoever any money or other thing of value staked, bet or wagered, or offered for the purpose of being staked, bet or wagered, by or for any other person upon any such result, or whoever knowingly becomes the custodian or depositary of any money or other thing of value so staked, bet, or wagered upon such result, or whoever aids, or assists, or abets in any manner in any of such acts all of which are hereby forbidden, shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
[4] Section 849.25, Florida Statutes (1985), provides:

849.25 "Bookmaking" defined; penalties; exceptions. 
(1) The term "bookmaking" means the act of taking or receiving any bet or wager upon the result of any trial or contest of skill, speed, power, or endurance of man or beast or between men, beasts, fowl, motor vehicles, or mechanical apparatus or upon the result of any chance, casualty, unknown, or contingent event whatsoever.
(2) Any person who engages in bookmaking shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. Notwithstanding the provisions of s. 948.01, any person convicted under the provisions of this subsection shall not have adjudication of guilt suspended, deferred, or withheld.
[5] Section 775.082(4)(b), Florida Statutes (1985), provides that a second degree misdemeanor may be punished by "a definite term of imprisonment not exceeding 60 days." A first degree felony, on the other hand, is punishable "by a term of imprisonment not exceeding 30 years... ." § 775.082(3)(b), Fla. Stat. (1985).